STATE, Respondent *v.* STORM, Appellant.
No. 9268.
Argued May 25, 1953. Submitted in Filing Briefs.
Decided December 3, 1953.
Amended on Denial of Rehearing January 15, 1954.
265 Pac. (2d) 971.

Mr. Justice Anderson specially concurred and Mr. Justice Angstman dissented.

W. B. Leavitt, Miles City, W. E. Coyle, Butte, for appellant. Arnold H. Olsen, Atty. Gen., John L. McKeon, Asst. Atty. Gen., Russell K. Fillner, Co. Atty., Forsyth, for respondent.

Mr. Leavitt, Mr. Coyle, Mr. McKeon and Mr. Fillner argued orally.

MR. JUSTICE FREEBOURN:

This is an appeal by John Loy Storm, defendant and appellant, from a judgment of conviction of murder in the second degree, under which he was sentenced to serve 20 years in the state prison.

The facts of the case are stated in State v. Storm, 125 Mont. 346, 238 Pac. (2d) 1161, wherein a new trial was granted.

Herbert (Chub) Hay, a witness for the prosecution who testified in the first trial, did not take the witness stand in the second trial. In his absence, and over the defendant's objection, the prosecution read his testimony to the jury sitting in the second trial. The objection should have been sustained.

Hay's testimony discloses that in an alleged conversation between Hay and defendant, while both were prisoners in the county jail, the defendant admitted the killing. In court, to county officers and others, defendant denied such killing. Hay, at the time of such alleged conversation, was serving a 30-day sentence for passing a fifty dollar bad check. He served 26 days of the 30-day sentence. Shortly before his arrest on the bad

check charge, he had finished serving 53 days in a Billings jail for "reckless or drunk driving." According to Hay, the alleged admission by defendant took place "a day after" defendant had given Hay a letter to be mailed by Hay after his release. The letter was addressed to the defendant's former wife. In this letter, admitted in evidence, the defendant said it "sure looks like I am stuck with first degree murder unless some one confesses. * * * I'm afraid John [his son] will do a foolish thing. * * * This will be mailed in Billings * * * I'll send this out by a fellow who is going out tomorrow as they don't allow any mail to go out unless they read it. * * *"

Not only did Hay give the letter to the sheriff, after promising defendant to mail it in Billings, but he also conveyed the alleged admission of the killing by defendant to the sheriff. In addition he told the sheriff of a conversation which defendant and his former wife had, and which Hay secretly and intentionally listened in on.

There is no other evidence, except the testimony of Hay read to the jury, which places or tends to place the defendant at the scene of the crime. The only other evidence tending to incriminate defendant are threats allegedly made.

R. C. M. 1947, sec. 93-401-4, provides that: "A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility.

Based upon the above statute our district courts, in the trial of cases, give an instruction similar to instruction No. 7 given by the trial judge in this case except the last sentence thereof, which is usually given separately. Instruction No. 7 reads: "* * * in determining the weight to be given to the testimony of any witness you have the right to consider the appearance of each witness on the stand, his manner of testifying, his apparent candor or lack of candor, his apparent fairness or lack of fairness,

his apparent intelligence or lack of intelligence, his knowledge and means of knowledge of the subject upon which he testifies, together with all the other circumstances appearing in evidence on the trial. Under our law the direct evidence of any witness who is entitled to full credit is sufficient proof of any fact except perjury or treason.''

Since the members of the trial jury neither saw nor heard Hay testify, defendant was denied the right to have the credibility of Hay, as a witness, judged by the jury; and the jury had no way of determining his credibility as provided by R. C. M. 1947, sec. 93-401-4, and instruction No. 7.

Realizing the inability of the jury to judge the credibility of Hay, the trial court gave the jury instruction No. 8 which read: ''You are instructed that the instruction on credibility cannot apply to the witness Hay whose testimony was read into the record and his testimony relating to a confession or an admission allegedly made by defendant cannot be considered by you as evidence of the guilt of the defendant unless said testimony is supported by other evidence in this case.''

The court should have added to instruction No. 8, ''which proves the defendant guilty beyond a reasonable doubt,'' for if the jury had the opportunity of seeing Hay on the stand and after doing so had decided he was not entitled to credit, and other evidence, as here, was not sufficient to prove guilt beyond a reasonable doubt, the conviction could not stand, for threats alone do not justify a conviction.

However, instruction No. 8 could not cure the injury done defendant by the failure of Hay to appear upon the witness stand and by the reading into evidence of his testimony, in his absence.

Our state Constitution, Article III, sec. 16, provides: ''In all criminal prosecutions the accused shall have the right * * * to meet the witnesses against him face to face * * *.'' Our legislature has emphasized this constitutional guarantee by using the same words in R. C. M. 1947, sec. 94-4806, subd. 3. Only by following this guarantee and admonition can a de-

fendant in a criminal action be assured of a fair trial. For it is only by meeting a witness face to face that he can be examined and cross-examined before a jury, which from his appearance, words and actions can determine if the witness is entitled to credit.

This right of the defendant to meet the witness against him "face to face" has but one exception in our state Constitution, Article III, sec. 17, which provides that where a person is imprisoned for the purpose of securing his testimony in any criminal proceeding, his deposition may be taken in the presence of the defendant and used as evidence on the trial, if the witness be dead or absent from the state at such time. Undoubtedly, the makers of our Constitution made this exception on the theory that the freedom of the witness was as sacred and as much entitled to preservation as that of the defendant.

Speaking of Article III, sec. 16, of our state Constitution, this court in State v. Vanella, 40 Mont. 326, 106 Pac. 364, 367, said: "He [the defendant] is entitled to meet the. witnesses against him face to face, if he insists upon it. In other words, these are rights which he may invoke. They are for his benefit, and, if he insists upon them, they cannot be denied him (State v. Lee, 13 Mont. 248, 33 Pac. 690) * * *."

We have in mind the Lee case cited above and also the case of State v. Byers, 16 Mont. 565, 41 Pac. 708. Neither of these cases touch upon the right of the jury to pass upon the credibility of a witness by observing such witness on the stand, while being examined and cross-examined.

We are also mindful of the many cases which allow evidence given at a first trial to be read into the record in a second trial, in the absence of the witness giving the same. These cases are all based on the theory that the accused has been present when the testimony was given, and had the opportunity of cross-examining the witness. 15 A. L. R. 512. Such cases proceed on the theory that the advantage of having the jury see the demeanor of the witness is no essential part of the right of a defendant to meet the witness against him "face to face."

State v. Heffernan, on rehearing, 24 S. D. 1, 123 N. W. 87, 25 L. R. A., N. S., 876, 140 Am. St. Rep. 764, holds that the advantage of having the jury see the demeanor of the witness is no essential part of the notion of confrontation and demeanor, even, may be dispensed with in case of necessity.

We cannot agree that the manner and demeanor of the witness before a jury is unimportant. In fact, R. C. M. 1947, sec. 93-401-4, supra, makes it all important. Such importance is bulwarked here by instruction No. 7, supra, given by the trial court in this case. It is so important that the presumption that a witness speaks the truth may be destroyed by the appearance and manner of the witness on the stand.

Here the conviction of defendant rests upon the testimony of an absent witness: A witness whose promise to mail a letter was made with no intention of keeping it; a bad check artist; an intentional eavesdropper; and a carrier of information to the sheriff. Certainly a person whom the average citizen would not trust with anything of value and one who was rewarded by a reduction in sentence and immediate release from jail.

It was the right of the defendant to have the jury see and observe the witness Hay upon the witness stand. It was his right that the jury see how Hay acted while under direct and cross-examination. It was his right to have the jury judge the credibility of Hay from his appearance and manner while on the witness stand. None of these rights could be had except and unless the witness met the defendant ''face to face'' in the presence of the jury during the course of trial. Had the jury seen and heard Hay as a witness before them, and felt such witness was not entitled to credit, defendant would have been entitled to a verdict of acquittal.

The fact that the first jury, which saw and heard Hay testify, also convicted the defendant minimizes nothing said here, because other evidence, sufficient to place the defendant at the scene of the crime and to make a case for the jury, was placed before the jury in the first trial. This evidence was held to

have been improperly admitted upon the first appeal before this court, and was not placed before the jury in the second trial.

Accordingly the judgment is reversed and the cause is remanded to the district court for a new trial (R. C. M. 1947, secs. 94-8210 to 94-8212) unless the district court should order a dismissal pursuant to the provisions of R. C. M. 1947, sec. 94-9505.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANDERSON, (specially concurring).

I agree with the result that the cause should be reversed but disagree with the reasons given for such result.

This is an appeal from a judgment of conviction entered on a jury's verdict of murder in the second degree. An appeal from a former judgment of conviction arising out of the same homicide is found in State v. Storm, 125 Mont. 346, 238 Pac. (2d) 1161.

I did not participate in the decision rendered in State v. Storm, supra, and therefore the conclusions I have reached here are based solely upon a comprehensive comparison of the two records in both cases and not upon any of the conferences of the justices had in connection with the first decision.

The evidence submitted to the jury in the instant case is substantially the same as the evidence submitted in the earlier case and no useful purpose would be served if it were again spelled out here. The only differences are: (1) In the trial, the appeal from which is now before us, certain inadmissible evidence, condemned in the former appeal, was not again received; (2) the testimony of a witness Hay was introduced by reading to the jury the record of his testimony given in the former trial. Witness Hay could not be found and therefore was not produced at the second trial.

There was no new evidence introduced in the instant case which in any way tended to strengthen the case of the State of Montana against the defendant. The fact is, that by omitting

those matters which were determined by this court to be objectionable, the case of the state was substantially weakened. Nonetheless, the cause was tried for a second time and the jury in in the second trial returned a verdict of guilty of murder in the second degree.

In the opinion of this court on the former appeal in State v. Storm, supra, the use of bloodhounds and other testimony was held to be inadmissible and in passing upon all the evidence there introduced, this court said, 125 Mont. at page 375, 238 Pac. (2d) at page 1176: *"To place the accused at the scene of the crime the state relied upon the so-called 'bloodhound testimony.' It alone placed him there."* Emphasis supplied.

As to the evidence upon which the instant determination was made, it is claimed that the determination made in State v. Storm, supra, became the law of the case.

R. C. M. 1947, sec. 94-2510, provides: "No person can be convicted of murder or manslaughter unless the death of the person, alleged to have been killed, and the fact of the killing by the defendant as alleged, are established as independent acts; the former by direct proof, and the latter beyond a reasonable doubt."

To sustain a conviction for murder in this state proof of the fact of the death alone is not sufficient. It must also affirmatively appear from the evidence beyond a reasonable doubt that such death was due to the unlawful and felonious act of the defendant. State v. Riggs, 61 Mont. 25, 201 Pac. 272.

It is properly urged by the accused that on the record before this court now the above conclusion became the law of the case on retrial and that it was incumbent upon the state to offer evidence in addition to that offered in the first trial tending to prove that the defendant was present at the time when and the place where the crime was committed, and by reason of the failure to prove additional facts the defendant's motions for dismissal and a directed verdict should have been granted.

Notwithstanding the view stated by Mr. Justice Angstman in his dissent, the accused properly raised the question of law in

the first trial as to whether or not there was legal, competent evidence which tended to prove that he was present at the time or place where he could have committed the crime with which he is charged and this court passed squarely upon the issue so raised.

It is my judgment that the language quoted above became the law of the case and it was the duty of the county attorney to either ask leave to dismiss the cause or to proceed to a new trial only upon evidence in addition to that which was adduced at the first trial. He chose to do neither. Compare District of Columbia v. Huffman, D. C. Mun. App., 42 A. (2d) 502.

It is an inflexible rule that our decision on a former appeal, whether right or wrong, is binding alike on the parties and the courts in the same action. State v. Gunn, 89 Mont. 453, 300 Pac. 212; Libin v. Huffine, 124 Mont. 361, 224 Pac. (2d) 144; Little v. Little, 125 Mont. 278, 259 Pac. (2d) 343.

MR. JUSTICE ANGSTMAN: (dissenting).

I think the court did not err in admitting evidence given at the former trial by the witness Hay who could not be produced where, as here, it was shown that due diligence was used in attempting to locate the witness and where he could not be found.

The rule was settled in this jurisdiction fifty-eight years ago in the case of State v. Byers, 16 Mont. 565, 41 Pac. 708, where the court said: ''At the preliminary examination of the appellant one John Young was a witness sworn and examined on the part of the state. The appellant was present, and cross-examined the witness. His evidence was taken down in full by the court stenographer, and afterwards transcribed and typewritten by him. Before the trial of this cause, the witness Young died. On the trial of the case the court permitted a transcribed copy of the stenographer's notes of Young's evidence, supported by his testimony that it was correct, to be read in evidence, over the objection of appellant. The admission of this evidence is assigned as error. In Mattox v. United States, 156 U. S. 237, 15 S. Ct. 337 [39 L. Ed. 409],—a case involving precisely the same condi-

tions as the case at bar,—Mr. Justice Brown, after an able and extended discussion of the subject, and collating the authorities, English and American, old and new, *pro* and *con,* says: 'Upon the other hand, the authority in favor of the admissibility of such testimony, where the defendant was present either at the examination of the deceased witness before a committing magistrate, or upon a former trial of the same case, is overwhelming. The question was carefully considered in its constitutional aspect by the supreme judicial court of Massachusetts in Commonwealth v. Richards, 18 Pick. 434, in which it was said ''that provision was made to exclude any evidence by deposition which could be given orally in the presence of the accused, but was not intended to affect the question as to what was or was not competent evidence to be given face to face according to the settled rules of the common law.'' * * * The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. This, the law says, he shall under no circumstances be deprived of, and many of the very cases which hold testimony such as this to be admissible also hold that not the substance of his testimony only, but the very words of the witness, shall be proven. We do not wish to be understood as expressing an opinion upon this point, but all the authorities hold that a copy of the stenographic report of his entire former testimony, supported by the oath of the stenographer that it is a correct transcript of his notes and of the testimony of the deceased witness, such as was produced in this case, is competent evidence of what he said.' ''

The opinion in the Byers case has never been overruled or questioned.

The right of defendant in a criminal case to ''meet the witnesses against him face to face'' as provided in section 16 of Article III of our Constitution is not an absolute right. The very next section of the Constitution provides for the taking of the deposition of a witness and that such deposition ''may be received as evidence on the trial,'' if the witness is dead or

424

absent from the state and the deposition may be taken without the presence of the defendant if he fails to attend after notice. Montana Constitution, Art. III, sec. 17; State v. Vanella, 40 Mont. 326, 106 Pac. 364.

In 14 Am. Jur., Criminal Law, sec. 187, p. 895, the author points out that at one time evidence given at a former trial was considered a violation of defendant's constitutional right to meet the witness but states: "This, however, is not the view usually taken at the present time. In fact the rule is settled in practically every jurisdiction that the reproduction of testimony taken at a former trial or in the presence of the accused at a preliminary hearing, when the presence of the witness cannot be secured, does not contravene the constitutional right of an accused to confront the witnesses against him in whatever language such right has been given. The confrontation of the witnesses at the former trial, if the defendant had the opportunity to cross-examine, is sufficient compliance with the constitutional requirement, and the testimony thus given may be used at the trial, provided the witness is not legally available." Cases are there cited from most of the states of the Union including United States Supreme Court cases. Later cases are collected in 122 A. L. R. 417, 426 and 159 A. L. R. 1232, 1242.

This state is not without statutory authority for the reception of such evidence in a criminal case. R. C. M. 1947, sec. 94-7209, provides: "The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this code." And R. C. M. 1947, sec. 93-401-27, in part provides: "In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: * * * 8. The testimony of a witness deceased, or out of the jurisdiction, or unable to testify, given in a former action between the same parties, relating to the same matter."

Here there was ample evidence that the absent witness could not be found and that due diligence was exercised in an effort to locate him. Under such circumstances the evidence given by him upon the former trial may be read to the jury. R. C. M.

1947, sec. 93-401-27, supra; State v. Byers, supra; Morris v. State, 68 Okl. Cr. 147, 96 Pac. (2d) 88; State v. Carr, 67 S. D. 481, 294 N. W. 174.

The majority opinion stresses the fact that the absent witness made a promise to mail a letter with no intention of keeping the promise; that he is "a bad check artist; an intentional eavesdropper; and a carrier of information to the sheriff", and that he received a four day cut in his 30 day sentence. All this was doubtless paraded before the jury by able counsel for defendant and whether the jury saw the witness or not had nothing to do with these conclusions. Nor would the appearance of the absent witness alter or change the contents of defendant's letter delivered to Hay, the absent witness, in which defendant wrote: "Sure looks like I am stuck with first degree murder unless someone confesses." I do not minimize the importance of permitting the jury to see the witnesses and to observe their demeanor on the witness stand. However, in view of the admitted past record of the absent witness, probably the state and not the defendant was prejudiced by not having the witness present in court.

The majority opinion states, "there is no other evidence, except the testimony of Hay read to the jury, which places or tends to place the defendant at the scene of the crime." I am not able to agree with that statement. The evidence without the testimony of Hay was sufficient to place defendant at the scene of the crime and to sustain a verdict of guilty. It is elementary that a conviction may be had on circumstantial evidence alone. Here the record shows, without the testimony of the absent witness, that defendant and the deceased had been in a farming venture as partners. Disagreement arose between the two relative to a tractor acquired by the partnership. When defendant could not reach an agreement with deceased whom he had called over the telephone relative to the tractor, he became angry and announced to his son and former wife, "I have about lived my life, I'll get him tonight when he comes home." On the day of the killing threats were made to employees of Bean to the effect that

"there won't be a boss tomorrow," and "you will have to look for a job tomorrow." Bean was shot in the back while sitting with his family at the dinner table eating at about 8:00 or 8:15 in the evening of the day of the threats. Shortly after the killing defendant was found in his trailer located about 2200 feet from the Bean residence. There was evidence, aside from that given by Hay, that defendant had been in Forsyth but had returned to his residence at his trailer home about 7:30 or 7:45 the evening of the killing.

Defendant was told by the sheriff that Bean had been killed and defendant replied, "Good, I'm glad, the son of a bitch was no good anyhow." A .270 Winchester rifle was found in the trailer occupied by defendant and his son and the evidence shows that such a rifle could have been used in the killing.

Without referring specifically to all of the evidence in the record, it is my opinion that there was ample evidence, direct and circumstantial, aside from that of the witness Hay to place defendant at the scene of the crime and to sustain a verdict of guilty. I mention this only to indicate that if the testimony given by Hay at the former trial were inadmissible, the most that defendant is entitled to is a new trial and the majority opinion should so state without equivocation.

Nor do I think there is merit in the proposition relied on in the special concurring opinion of MR. JUSTICE ANDERSON to the effect that the opinion on the former appeal settled the point of the sufficiency of the evidence to place defendant at the scene of the crime. I think the statement made in the majority opinion on the former appeal on this point is nothing more than an observation from an oblique approach that the bloodhound evidence was prejudicial to defendant, a point upon which there was no disagreement among the members of the court. The issue as to whether the balance of the evidence was sufficient to sustain a conviction or to place defendant at the scene of the crime was not before the court. Had that issue been before the court it would have been concluded by the admission of defendant made

to the witness Hay that, "I did kill the son of a bitch," referring to the deceased.

In my opinion it was not error to receive the testimony given by the witness Hay at the former trial, and that the judgment should be affirmed.