[Crim. No. 1242.   Fourth Dist.   Sept. 18, 1958.]

THE PEOPLE, Respondent, v. CHARLES B. WINTERS, Appellant.

Hugh Wesley Goodwin for Appellant.

Edmund G. Brown, Attorney General, and John M. Huntington, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendant-appellant was charged with and convicted by a jury of the offense of rape, a violation of section 261, subdivision 4 of the Penal Code, and robbery, second degree, violation of section 211 of the Penal Code, on October 19, 1957.

The prosecutrix, aged 22, about 5 feet 6 inches tall, weighing about 140 pounds, was living with her husband in Lemoore. On October 19, 1957, she left in her car with her four children, ranging in age from 2 to 5 years, to visit her mother near Riverdale. On her return home that evening about 8:45, her car ran out of gasoline. After waiting alongside the road for some time appellant and his 12-year-old brother-in-law drove up and offered to push her car to a service station. After some effort he said he could not negotiate it and he invited the prosecutrix and her children to ride with him to the station. They got in the back seat of his car. Appellant drove off the highway and up a more or less isolated dirt road, stopped, got out, opened the door to the back seat and invited the prosecutrix to see a rear tire which he said was flat. He then put his hands on her shoulders and told her to put the baby down from her arms or in the front seat. She testified she became "scared" and said "No" over and over, and refused; that he said the boy in the front seat had a gun and she turned and saw the boy standing on the other side of the car facing toward the children in the back seat; that she could not see his hands to determine whether he had a gun; that because of what appellant said she opened the front door and placed the baby down on the front seat; that appellant steered her around in front of the car with his arm around her and she did not resist; that appellant then started talking about "gangs . . . Duke's Gang of Los Angeles," and said he was a member of it; that there were "guys all around there" and he told her to be quiet and not cry so

loud and that she would be lucky if the "gang don't get you"; that appellant walked her down the road and in back of some trees; that she was crying all this time and had her hands over her face; that appellant told her to remove her clothing which she did, partially; that appellant brought a blanket, put it on the ground, and accomplished an act of sexual intercourse; and that all of that time he kept telling her about "gangs throwing people in the river" and if she didn't do as he said they would never go home. She said she thought she heard twigs crackling near-by and she believed appellant when he said not to cry aloud or protest and she believed the 12-year-old boy had a gun; that she consented to two such acts on this occasion because she was afraid; that appellant had warned her not to tell because someone had her automobile license number and would follow her home and that if she turned appellant in, someone would "get them" while appellant was in jail. She said she walked back to the car "sniffling"; that appellant told her to sit in the front seat with him and that she saw a gun on the floor of the car when she got in and appellant made reference to it; that appellant then drove to Hanford and his car ran out of gasoline; that appellant made her walk with him for a distance but a car came by and he told her to run back to his car; that he also returned shortly and obtained the gun from the front seat and handed it to the boy who put it in the back by the window; that appellant then left again and she made no effort to get away because she was "scared"; that she felt she could not leave her children there alone; that appellant came back and stopped a passing car; that the operator offered to take him to town for gasoline but after noticing a woman and children in the car he asked who they were and appellant said it was his wife; that the operator refused to leave them there, pushed their car into town, and appellant left and went to the oil station. This driver testified at the trial and described appellant. The prosecutrix further testified that all the time appellant was gone the boy had the gun in the back seat up by the rear window; that appellant's threats had "scared her" sufficiently that she made no effort to get away to report him; that after obtaining a can of gasoline for her car appellant proceeded back to it, placed some gasoline in it and directed her to drive his car and follow him while he was driving her car; that he showed her a gun in his possession from the glove compartment of his car and said the "gang" had issued it to him; that she followed him with the children

to a dead-end road and appellant told her she was never going home and ordered her to leave the children with the boy in her car and then ordered her to undress in his car and again accomplished an act of sexual intercourse; that one of the children came over to his car crying and she asked to be left alone so she could go home in her car; that she got in it; that her wallet was on the front seat and appellant asked her to hand it to him; that he went through it and took the $7.00 contained therein; that she did not protest because he had already made so many threats toward her; that she wanted her driver's license back so he threw the wallet to her without the money, and that she then left for home, arriving at about 1:30 a. m.; that she put the children to bed and took a shower and then she went to bed and started crying because of her fear of telling her sleeping husband of the occurrences; that he awakened and inquired the cause of her crying and she revealed the above-mentioned facts to him; that she feared appellant had the license number of her car and if put in jail his ''gangs'' would call on them.

The law-enforcement officers were called and on October 24th appellant was apprehended and questioned. He stated that on October 19 he was home all afternoon and evening and had not taken his car out. Later, he stated he was home until dark and had been drinking wine; that he then left in his car with the boy, Christopher; that the gun was already in the car; that ''Chris'' had it for a while and later put it over the back seat; that he was going to kill pigeons; that en route he saw the prosecutrix stalled in her car and out of gasoline; that he put her and the children in his car and stopped near a bridge and told her he had a flat tire; that he did not have sexual intercourse with her because she refused; that no threats were made to her about ''gangs'' and he never mentioned anything about a gun; that they drove to a gasoline station, bought some gasoline for each car and she gave him $2.00 for this purpose; that they drove back to her car, placed the gasoline in it; that she gave him $5.00 and left for home; and that he did not have sexual intercourse with her at all.

On another occasion, with a shorthand reporter present, he changed his story and said he did have sexual intercourse with her twice there and once later, as described by the prosecutrix, but claimed she consented to these acts; that he told her he probably would not have money enough to get home so she handed him her wallet and told him to take the $7.00

contained in it, said he could have it, and that he gave the billfold back to her and left.

On this appeal appellant claims: (1) that the testimony of the prosecutrix was inherently improbable and advances his reasons why the evidence falls short of that required to show that since the prosecutrix did not resist, she must have been prevented by threats of great and immediate bodily harm, accompanied by apparent power of execution, citing Penal Code, section 261, subdivision 4; and *People* v. *Peterman,* 103 Cal.App.2d 322 [229 P.2d 444].

A threat may be expressed by acts or conduct as well as by words. (*People* v. *Harris,* 108 Cal.App.2d 84, 89 [238 P.2d 158].) Submission through fear is not consent. (*People* v. *Cassandras,* 83 Cal.App.2d 272, 279 [188 P.2d 546].) A mere recitation of the testimony of the prosecutrix meets the requirements prescribed by Penal Code, section 261, subdivision 4. While the testimony of the prosecutrix, when considered in connection with appellant's story, may well have been argued to the jury in support of his contention that there was not sufficient reasonable resistance offered by the prosecutrix, the jury's conclusion on this subject is final and is supported by the evidence. It cannot be said that her testimony was inherently improbable. (*People* v. *Simpson,* 43 Cal.2d 553, 563 [275 P.2d 31]; *People* v. *Showers,* 90 Cal.App.2d 248, 253 [202 P.2d 814]; *People* v. *Ogden,* 41 Cal.App.2d 447, 455 [107 P.2d 50]; *People* v. *Harris, supra.*)

Appellant next argues that the prosecutrix merely handed her money to him without force or fear on his part, and accordingly the robbery charge cannot be supported. It is not necessary that the robbery be accomplished by means of both force and fear. (*People* v. *Borra,* 123 Cal.App. 482, 484 [11 P.2d 403]; *People* v. *Calliham,* 81 Cal.App.2d 928 [185 P.2d 342]; Pen. Code, § 211.) There was sufficient evidence that the appellant accomplished the acts of sexual intercourse and took the money from the prosecutrix by means of fear. (*People* v. *Enochs,* 113 Cal.App.2d 231, 233 [247 P.2d 929].)

The argument that appellant could not be convicted of second degree robbery where the threat by the gun was the inducing cause, because it would be robbery of the first degree, is untenable. The threats made were not only by the use of a gun but there were other threats which could well have placed her in fear to the extent that she parted with her money. At any rate, appellant could not complain that he was prejudiced

by the verdict. (*People* v. *Hudson,* 92 Cal.App. 593, 595 [268 P. 687]; *People* v. *James,* 20 Cal.App.2d 88, 90 [66 P.2d 461].)

Lastly, appellant claims the prosecutor committed prejudicial misconduct in stating he expected to prove defendant's consciousness of guilt by two named witnesses, i. e., that appellant attempted to escape from jail during his incarceration prior to trial, and made several statements during the day of his intention so to do, particularly when he did not later call such witnesses for this purpose. Appellant objected to the statement at the time. At the outset, counsel for the People announced he was merely stating what he thought his evidence would be and that he fairly believed it was admissible to show consciousness of guilt under *People* v. *Arnold,* 199 Cal. 471, 497 [250 P. 168]. The court, during the arguments, remarked that it thought the jury understood "by this time" that statements of counsel are not to be taken as evidence and that the evidence will come from the witnesses when admitted by the court. The reason for not calling the witnesses is not indicated. It does not affirmatively appear that there was any bad faith on the part of the prosecutor in making the statement or that the jury was not adequately instructed in respect to the statement of counsel not being considered as evidence in the case. We are convinced that no prejudicial error resulted. (*People* v. *Sing Yow,* 145 Cal. 1, 9 [78 P. 235]; *People* v. *Gordon,* 71 Cal.App.2d 606, 631 [163 P.2d 110]; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Judgment and order denying a new trial affirmed.

Mussell, J., and Coughlin, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.