THE STATE OF MONTANA, Plaintiff and Respondent,
v. KENNETH EUGENE ZACHMEIER, Defentant and
Appellant.

No. 11589.
Submitted March 10, 1969.
Decided April 28, 1969.
453 P.2d 783.

Berger, Anderson & Sinclair, Billings, Arnold A. Berger (argued), Billings, James J. Sinclair (argued), Billings, for appellant.

Robert L. Woodahl, Atty. Gen., Helena, Douglas J. Wold, Asst. Atty. Gen., (argued), Helena, John L. Adams, Jr., County Atty., Billings, for respondent.

MR. JUSTICE BONNER delivered the Opinion of the Court.

This is an appeal by the defendant, Kenneth Eugene Zachmeier, from a conviction of manslaughter in the district court of the Thirteenth Judicial District, county of Yellowstone.

The defendant was arrested on October 16, 1966 and the following day was charged by information with murder in the first degree. On January 7, 1967, Zachmeier offered to plead guilty to manslaughter. His offer to so plead was rejected by the court.

On March 22, 1967, defendant was convicted of murder in the second degree and sentenced to a term of 30 years in prison. He was transferred to the Montana state prison on March 28, 1967. That conviction was later reversed by this Court, State v. Zachmeier, 151 Mont. 256, 441 P.2d 737, 25 St. Rep. 366 (1968). Defendant was then returned to the Yellowstone county jail on June 27, 1968 and, after posting bond, was released therefrom on July 9, 1968.

On July 19, 1968, the information was amended charging the defendant with second degree murder and after agreement between the prosecution and defendant's counsel, trial was had under Title 95, R.C.M.1947, the new Montana Code of Criminal Procedure. At the second trial defendant was convicted of manslaughter. During the course of the trial the

transcript of the sworn testimony of one Margie L. Hysinger, a prosecution witness at the first trial, was read into the record over objection of defendant as part of the case for the state.

Thereafter Judge E. E. Fenton on September 13, 1968, sentenced defendant to 10 years in prison. The court's order provided:

"* * * IT IS ORDERED that the defendant shall be allowed credit upon the term of imprisonment heretofore imposed for each day of incarceration from March 28th, 1967 to July 9th, 1968, being a total of one year, three months and ten days and that said credit shall be allowed and deducted from the period of one year, three months and ten days immediately preceding the expiration of the sentence herein imposed, and it is specifically ordered that the time so credited upon the sentence of the defendant shall in no way enter into the compuation of any date when the defendant may be considered for purposes of parole."

The initial problem arises from the fact that when the defendant was originally tried, he was tried under the old rules of procedure. The parties, not being certain which rules should govern, agreed to be bound by the new rules contained in Title 95, R.C.M.1947. We see nothing wrong with that agreement, but we must now decide whether these new rules control every aspect of the case or whether Montana law as it existed prior to January 1, 1968, should govern certain aspects of the case. We feel that the entire case must be brought under the aegis of the new rules and that our decision in State ex rel. Nelson v. Ellsworth, 141 Mont. 78, 375 P.2d 316, is not relevant to this appeal.

In the Nelson case the petitioner alleged that he had been convicted of burglary in the first degree; the conviction had been reversed; and, he had subsequently been convicted again of burglary in the first degree. On appeal he contended he should be given credit for the time served under the prior

reversed conviction. On that appeal we noted that Montana statutes made no provision for such crediting of time served and determined that this was a question for the legislature and not one for the Court.

Since that time the legislature has responded. Section 95-2214, R.C.M.1947, provides for crediting of time served under a judgment that has been modified or declared invalid as well as crediting of good time earned during that same period unless the sentencing authority decides to deny credit for the good time earned. Also section 95-2215 provides for crediting of time served before or after judgment where the incarceration was on a bailable offense.

The defendant contends that under section 95-2215 he is entitled to credit for the 157 days he was incarcerated between his arrest on October 16, 1966, and his conviction on March 22, 1967. In order for section 95-2215 to apply, however, it must be shown that Zachmeier was incarcerated on a bailable offense.

Murder in the first degree, with which Zachmeier was originally charged, is a capital offense. Section 94-2505, R.C.M.1947. It is also a bailable offense under the Montana Constitution, Art. III, § 19, which states:

"All persons shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great."

In State ex rel. Murray v. District Court, 35 Mont. 504, 508, 90 P. 513 (1907), wherein the defendant charged with murder filed his petition for a writ of habeas corpus, this Court said:

"In this state all persons are bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great. (Const. art. 3, § 19.) Accordingly, when an application is made for bail, in a capital case, the county attorney, if he resists the application, should make some showing that the proof is evident or the presumption great, thus

bringing the case within the exception mentioned in the Constitution. On failure to make such showing, the defendant is entitled to bail in all cases; but, if such showing is made, the court or judge should refuse bail without hesitation.''

 In line with our Constitution and the foregoing case, we hold that first degree murder is a bailable capital offense except in cases where it has been shown that the proof is evident or the presumption great. We also hold that because the case was tried under the new rules of criminal procedure the defendant, under section 95-2215, is entitled to credit for the 157 days he was incarcerated between arrest and conviction.

Viewing the district judge's order, it is clear he allowed the defendant credit against the 10 year sentence on the second conviction but provided that prior time served was not to be considered when determining when defendant would become eligible for parole. The defendant, relying on the case of Patton v. State of North Carolina, 381 F.2d 636 (4th Cir. 1967), cert. den. 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968), contends that for purposes of parole he is, under section 95-2214, entitled to credit for the 450 days served between his conviction (March 22, 1967) and his release on bond (July 9, 1968) following reversal of the first conviction. He bases his contention on the argument that to deny him credit would subject him to double jeopardy.

We do not think the Patton case is applicable to the present fact situation because the issue in Patton was increased punishment on retrial.

The real issue for this Court here is not increased punishment but whether under section 95-2214, the district court while crediting the defendant for time served so far as the sentence itself is concerned, also had the authority to provide that credit for time previously served should not be considered when determining eligibility for parole.

██ Looking at section 95-2214 it quickly becomes apparent

that the only power allowed the sentencing authority is the power to deny credit for good time earned under section 80-1905 while serving the prior invalid or modified judgment. Section 95-2214 does not authorize the sentencing authority to provide that credit for time previously served should not be considered in determining eligibilty for parole. All it allows the sentencing authority to do is deny credit for good time earned while serving the prior modified or invalid sentence, if the sentencing authority in its discretion chooses to do so. That discretionary power is in close accord with Desmond v. United State Board of Parole, 397 F.2d 386, 390 (1st Cir. 1968), 393 U.S. 919, 89 S.Ct. 249, 21 L.Ed.2d 206, where the court of appeals held that while that circuit had long applied the rule that a prisoner under an invalid sentence, it did not follow that even when a prisoner had fully served one of two consecutive terms good time earned on the first sentence vested irrevocably. We think the same is true with regard to good time earned while serving a sentence that is later declared invalid or modified, and credit for that good time can be denied if the sentencing authority decides to do so under section 95-2214, R.C.M.1947.

In light of the fact that the legislature provided only one exception to the allowance of credit for time previously served, we do not think the court below was authorized to make the stipulation it did, and so far as that stipulation is concerned the judgment must be modified.

The defendant's second and third contentions of error, which he argued as one, are that the admission of witness Hysinger's testimony amounted to a denial of his right to confront the witnesses against him. He argues that observations by the jury of the manner and demeanor of witnesses against him is an integral part of a defendant's right to meet the witnesses against him face to face. It must be remembered that at the trial it was stipulated that a subpoena had been issued for witness Hysinger; that a diligent search had been made for

her; that evidence indicated she was out of state; that her present whereabouts were unknown; and that her absence had not been procured by the state; although defendant did thereafter object to the admission of her testimony.

In support of his contention that defendants have a constitutional right to meet witnesses against him face to face at trial so the jury can observe their demeanor and pass upon their credibility while observing the witness on the stand, the defendant relies primarily on the cases of State v. Storm, 127 Mont. 414, 265 P.2d 971 (1953) and State v. Piveral, 127 Mont. 427, 265 P.2d 969 (1953). It is not necessary to further dwell on these authorities because this trial was conducted under the new rules of criminal procedure. Section 95-1802(e), R.C.M.1947, provides:

"At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears: That the witness is dead; or that the witness is out of the state of Montana unless it appears that the absence of the witness was procured by the party offering the deposition; or that the witness is unable to attend or testify because of sickness or infirmity; or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. If only a part of a deposition is offered in evidence by a party, an adverse party may require him to offer all of it which is relevant to the part offered and any party may offer other parts. For the purposes of this section, the word 'deposition' shall in addition include any sworn testimony previously given by a witness which has been recorded and transcribed by a qualified stenographer and given in the presence of the defendant and cross-examined by him or his attorney on matters

relevant to the trial or hearing where such deposition is sought to be used."

The trial court had the foregoing section in mind when the ruling was made permitting the reading of the testimony of the absent witness as disclosed from the following quote taken from the record:

"THE COURT: Now for the purposes of this section, the word 'deposition' shall in addition include any sworn testimony previously given by a witness which has been recorded and transcribed by a qualified stenographer * * *. The testimony that you seek to offer meets that condition also, does it?"

In Mattox v. United States, 156 U.S. 237, 242, 243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895), the United States Supreme Court stated:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards, even by the death of the witness; and that, if notes of his testimony are permitted to be read, he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. To say that a criminal, after having once been convicted by the testi-

mony of a certain witness, should go scot free simply because death has closed the mouth of the witness, would be carrying his constitutional protection to an unwarrantable extent. The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused."

In our opinion what the United States Supreme Court said in the above cited case with regard to deceased witnesses should also apply with regard to any sworn testimony where the defendant has been afforded an opportunity to cross-examine the witness and where it has also been shown that after due diligence the witness cannot be found, and his absence was not procured by the party offering the testimony.

In Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the United States Supreme Court reversed the Oklahoma court in a case where testimony at a preliminary hearing was used. In that case, the counsel for defendant did not cross-examine at the preliminary hearing. Also, the witness was then in a Federal penitentiary some 200 miles distant and could have been made available. The Court reaffirmed, in effect Mattox v. United States, supra. (See also State v. Rawls, 451 P.2d 127, an Oregon case, where on the second trial a witness claimed the privilege against self-incrimination.)

One reason for the rule of confrontation is to prevent ex parte charges by faceless informers. The constitutional guarantee seeks to assure that one accused of crime will at some point in time be afforded an opportunity to confront all witnesses who will testify in open court. We can see no error in the use of sworn testimony of a deceased or absent witness where the accused had an opportunity to cross-examine and test the recollection and testimony of the witness in open court at a previous judicial proceeding.

Here, the uncontradicted evidence shows that prior to the trial the witness had removed herself from the juris-

diction of the court, which placed her beyond the reach of the process of the court and that after due diligence on the part of the prosecution the residence of the witness could not be ascertained. The attorney for the defendant by stipulation admitted that the witness was out of the state and her whereabouts unknown. Thus in our opinion the prosecution has successfully borne the burden of proof by a proper showing to explain to the court why the witness could not be produced and in light of this showing the district court in its judicial discretion and in accordance with the rules of criminal procedure rightfully allowed the evidence given by the absent witness at the former trial to be introduced in evidence at the instant trial.

We have also reviewed the defendant's objections to the instructions given by the court concerning credibility of witnesses. They are the usual standard instructions and we can find no error in their use.

The cause is remanded to the district court with instructions to modify its judgment in accordance with the views herein expressed and as so modified the judgment will be affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, HASWELL and JOHN C. HARRISON, concur.