THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
JOHN RAY BOULDIN, DEFENDANT AND APPELLANT.

No. 11656.
Submitted June 10, 1969.
Decided July 8, 1969.
456 P.2d 830.

Jack Yardley, David D. DePuy, Livingston, William Dee Morris (argued), Helena, for defendant and appellant.

Robert L. Woodahl, Atty. Gen., Douglas J. Wold, Asst. Atty. Gen. (argued), Helena, Byron L. Robb, County Atty., John W. McDonald, Jr., Deputy County Atty., Livingston, for plaintiff and appellee.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by defendant, John Ray Bouldin, from conviction of the crime of forcible rape and from denial of his motion for a new trial. The case was tried by jury in the district court of Park county before the Hon. Jack D. Shanstrom, district judge, who sentenced defendant to a term of 12½ years in the state prison.

Broadly speaking, defendant was charged with the forcible

rape of an adult female; his defense admitted the intercourse but claimed the prosecutrix consented to it.

The essential facts disclosed by the evidence indicate that on the evening of July 20, 1968 the defendant, his neighbor Dennis McLane, and their wives, visited at least four Livingston bars where they engaged in various activities, including drinking and dancing, returning to the McLane apartment about 2:00 a.m. on July 21.

At the apartment defendant suggested to his neighbor that they leave their wives there and go back uptown, get some beer and girls, and finish their party. Defendant's wife was nine months pregnant at the time, and the couple had not engaged in sexual relations for approximately one month. After leaving the apartment the evidence is conflicting but it is agreed that at about 3:00 a.m. both men were back at their respective apartments.

The prosecutrix states that at some time prior to 3:00 a.m. the defendant entered her apartment, grabbed her, threatened her, dragged her into the bedroom of her apartment, took off her clothes, and his, and forcibly raped her, during which time she slipped into unconsciousness.

She testified that she did everything she could to resist defendant's attack. At no time did she encourage him or consent to his advances, she tried to kick him "where it hurts", but despite her words and actions the act was completed. During the act, or immediately before penetration, defendant told her he had laid a knife on the bed and he would use it on her if she did not satisfy him. Prosecutrix further testified that, although she never saw a knife, she was afraid for her life and she blacked out.

When prosecutrix awoke, defendant was gone. She saw a wallet laying on the bed, which was later identified as belonging to the defendant by his name and picture on a Montana driver's license. She picked up the wallet and was about to

go for help when she saw and heard defendant's wife knocking on her front door. She hid until Mrs. Bouldin left.

On the other hand, defendant states that he saw a light on as he passed the apartment of the prosecutrix and he stepped up on the front porch. The door was open and the prosecutrix was sitting in the living room. Defendant contends she recognized him, talked to him and invited him inside; that he had previously known her and a few years earlier had dated her, and on one occasion they had engaged in sexual intercourse.

Defendant testified they talked about old times for a few minutes, after which they had a short period of "making out". Both then decided to go into the bedroom, there disrobed and had intercourse, with the consent of the prosecutrix. Defendant denies having a knife in his possession, threatening the prosecutrix, or any physical or verbal resistance on her part. After the act, he left the apartment and returned to the Mc-Lane house. Defendant was with the prosecutrix admittedly for approximately twenty minutes and does not deny the act of intercourse.

After realizing he had lost his wallet, defendant ordered his wife to retrieve it. Upon knocking on prosecutrix's front door and getting no response, and then going to the back door with similar results, defendant's wife returned to where he was waiting, and they then went to their own apartment.

Prosecutrix then left her apartment and aroused a near-by neighbor, Mrs. Bruning. As the neighbor came to the door, a male friend of the prosecutrix arrived and subsequently took the prosecutrix to the Livingston police station where a complaint was filed. A short time later the male friend went to the home of the defendant and took him to the police station where he was identified by the prosecutrix as the one who had attacked her.

At the preliminary hearing, in the presence of the defendant and his counsel, Mrs. Bruning testified under oath that

prosecutrix had awakened her from sleep and she had gone to the door thinking it was the defendant's pregnant wife. She further testified she heard prosecutrix yell something as she ran to her friend's car. On cross-examination Mrs. Bruning testified as to what she later learned of the incident. This testimony was taken by a court reporter at the preliminary hearing and later reduced to writing. Upon the trial, when the witness could not be located by the state, proper foundation was laid for admission of the testimony given at the preliminary hearing. It was read to the jury at defendant's trial in the district court without objection by defendant.

Defendant has raised four issues on appeal which will be discussed in the order set out below:

1. Whether the absence of counsel at the pre-trial identification of the defendant by the prosecutrix in a single person person lineup tainted her in-court identification so as to constitute reversible error.

2. Whether it was reversible error to admit the testimony of Mrs. Bruning taken at the time of the preliminary hearing.

3. Whether there was error in the giving of court's instruction No. 24 defining and explaining the elements of the crime.

4. Whether there was an insufficiency of the evidence to support the conviction.

Directing our attention to the first issue—whether the absence of counsel at the pre-trial identification of defendant by the prosecutrix in a single person lineup tainted her in-court identification—depends on the "totality of circumstances" which surround the identification process (Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199), and unless this Court is able to declare a belief that it did not contribute to defendant's conviction beyond a reasonable doubt, defendant is entitled to a new trial (Chapman v. State of California, 386 U.S. 18, S.Ct. 824, 17 L.Ed.2d 705).

In the absence of evidence that the in-court identification of defendant had an independent origin or that the error

in any event was harmless, a pre-trial identification of the defendant in a single person lineup in the absence of counsel constitutes reversible error (United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149). However, the circumstances reflected by the record in this case show the identification in question was based on several independent sources sufficient to remove it from the strictures of the Wade case, supra. We therefore hold that, in view of the totality of circumstances, the admission of the in-court identification constituted harmless error beyond a reasonable doubt. Defendant's defense here asserted that he knew the prosecutrix, having had, according to his version, previous intercourse with her. Thus defendant by his own defense asserts that the identification could not have contributed to his conviction.

The identification by the prosecutrix at the trial was based on no less than three independent sources. There was sufficient light in her bedroom so that she could see her assailant clearly enough to positively identify him. During the act they were face to face with sufficient light for her to get a good look at his physical appearance and his facial features. After the act she could see the wallet which itself provided ample evidence that the defendant had been in the room. It is uncontested that the wallet belonged to the defendant.

One further fact demonstrates that the error, if any, was harmless beyond a reasonable doubt. Defendant admits his presence in the bedroom, his ownership of the wallet, and his sexual intercourse with the prosecutrix. Under such circumstances, what possible bearing could the prosecutrix's identification of defendant have upon his conviction? Additionally, defendant, having raised the defense of consent did not object at the trial to the admission of the pre-trial identification.

■ Proceeding to the second issue—whether it was reversible error to admit the testimony of Mrs. Bruning taken at the time of the preliminary hearing depends on the appli-

cation of section 95-1802(e), R.C.M. 1947, and compliance with its terms.

In State v. Zachmeir, 153 Mont. 64, 453 P.2d 783, Justice Bonner, speaking for a unanimous Court, stated:

"In our opinion, what the United States Supreme Court said in [Mattox v. United States, 156 U.S. 237, 15 SCt. 337, 39 L.Ed. 409] with regard to deceased witnesses should also apply with regard to any sworn testimony where the defendant has been afforded an opportunity to cross-examine the witness and where it has also been shown that after due diligence the witness cannot be found, and his absence was not procured by the party offering the testimony."

Again, as in Zachmeier, we can see no error in the use of sworn testimony of an absent witness where the accused has had an opportunity to cross-examine and test the recollection and testimony of the witness at a prior judicial proceeding.

The admission of the testimony of a witness given at a preliminary hearing in defendant's presence, which witness has been cross-examined by defendant's counsel, and which testimony has been recorded and transcribed by a court reporter, is expressly admissible in evidence under the provisions of section 95-1802(e), R.C.M.1947, proper foundation having first been laid. Insofar as they are inconsistent with this holding, the cases of State v. Storm, 127 Mont. 414, 265 P.2d 971 and State v. Piveral, 127 Mont. 427, 265 P.2d 969, and cases following, are expressly overruled.

One reason for the rule of confrontation is to prevent ex parte charges by faceless informers. The constitutional guarantee seeks to assure that one accused of crime will at some point in time be afforded an opportunity to confront all witnesses who will testify in open court. Such guarantees are protected under section 95-1802, R.C.M.1947.

At the trial the county attorney was sworn as a witness and testified in detail establishing the statutory requirements for the admission of the testimony. This testimony was received

at defendant's trial without objection and defense counsel agreed to its use. Here a real effort was made to locate the witness, and when that failed proper foundation was laid by the state as to the search. The record shows that defendant was represented by counsel at the taking of the testimony and completely exercised his right of cross-examination.

Defendant next contends it was error for the court to give to the jury instruction No. 24 defining and explaining the elements of the crime. The instruction was given as follows:

"You are instructed that rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances:

"(1) Where she resists but her resistance is overcome by violence or force.

"(2) Where she is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution, or by any intoxicating narcotic, or other anestetic (sic) substance, administered by or with the privity of the accused.

"The words 'threat of immediate and great bodily harm, accompanied by apparent power of execution' as used in these instructions can mean either oral threats or threats made by the conduct and behavior of the person charged with the crime of rape.

"The essential guilt of rape consists in the outrage to the person and feelings of the female. Any sexual penetration, however slight, is sufficient to complete the crime. Proof of emission is not necessary.

"Rape is punishable by imprisonment in the state prison for not less than two years, nor more than ninety-nine years."

■■ Paragraphs one and four are extracted directly from sections 94-4101 and 94-4104, R.C.M.1947, respectively and need no further comment. However, defendant contends that paragraphs two and three are not the law in Montana. With this contention we cannot agree. Paragraph three, with the ex-

ception of the last sentence is a verbatim recital of section 94-4103, R.C.M.1947. The last sentence i.e., that proof of emission is not necessary, is clearly the law. See People v. Edwards, 173 App.Div. 375, 159 N.Y.S. 410; 75 C.J.S. Rape § 10(c); 44 Am.Jur., Rape § 4. The only portion of the instruction which is not phrased in statutory terms is the second paragraph which, while not necessary to the instruction, represents a helpful explanation of the elements of threat required which may be evidenced either by oral statements or by conduct of the assailant. This Court has not had the opportunity to specifically approve the language of paragraph two; however other jurisdictions have given effect to the statement "A threat may be expressed by acts or conduct as well as words." People v. Winters, 163 Cal.App.2d 619, 329 P.2d 743, 745 (1958); People v. Harris, 108 Cal.App.2d 84, 238 P.2d 158 (1952); People v. Flores, 62 Cal.App.2d 700, 145 P.2d 318 (1944). We believe this to be a proper statement as to the law in Montana, and therefore find the instruction to be correct.

The last issue assigned for review is whether there was sufficient evidence to support the conviction. Whether prosecutrix offered resistance or consented to the intercourse is patently a jury question. State v. Whitmore, 94 Mont. 119, 21 P.2d 58. It has long been the law in this state that a rape conviction may be sustained by the uncorroborated testimony of the prosecutrix. State v. Moe, 68 Mont. 552, 219 P. 830. Further, this Court has frequently observed that disputed questions of fact and the credibility of witnesses will not be considered on appeal but that determination of such matters is within the province of the jury. As long as there is substantial evidence to support the verdict, it will not be disturbed on appeal. State v. Doe, 146 Mont. 501, 409 P.2d 439; State v. Lagge, 143 Mont. 289, 388 P.2d 792; State v. Pankow, 134 Mont. 519, 333 P.2d 1017. Here the testimony of the prosecu-

trix and the surrounding circumstances constitute substantial evidence to support the conviction.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN C. HARRISON and BONNER, concur.