Ronald Dean RICHTER, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

Alvin Leroy RICHTER, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

Nos. 5497, 5498.

Supreme Court of Wyoming.

March 18, 1982.

Rehearing Denied April 7, 1982.

---

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program, Laramie, Sylvia Lee Hackl, Asst. Public Defender, Cheyenne, and Jodi Brayton, Public Defender Intern, Cheyenne, signed brief on behalf of appellants. Ms. Hackl appeared in oral argument.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Allen C. Johnson, Senior Asst. Atty. Gen., signed brief on behalf of appellee. Mr. Johnson appeared in oral argument.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

Appellants were each convicted of first degree sexual assault in violation of § 6–4–302(a)(ii), W.S.1977.[1] Both have appealed

---

1. Section 6–4–302(a), W.S.1977 provides:

   "(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:

   "(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement; or

   "(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats; or

their convictions, though on different grounds. Appellant, Ronald Richter, mounts a challenge based upon a violation of his constitutionally guaranteed right to silence. He contends that it was reversible error for the prosecutor to cross-examine him concerning his failure to tell the police officers who arrested him the exculpatory story which he offered to the jury. The prosecutor's questioning, appellant argues, constituted impermissible comment upon the right to silence guaranteed by the Fifth Amendment to the United States Constitution [2] and by Article 1, § 11 of the Wyoming Constitution.[3]

Appellant, Alvin Richter, attacks his conviction upon the basis that the evidence against him was insufficient as a matter of law to support his conviction. Specifically, he argues that the trial court committed reversible error when it denied his motion for acquittal.

We will affirm.

On July 19, 1980, the victim in this case, while at the Mayflower Tavern in Cheyenne, decided to walk to her home located across the railroad tracks and on the south side of town. As she crossed the Riner viaduct over the railway yards, she was offered and she accepted a ride from a passing motorist who dropped her off at the Denver Hill Inn.

From there, she continued walking. Soon a pickup truck pulled alongside of her. The passenger in the truck, later identified as Alvin Richter, asked her if she wanted a ride. At first she refused, but, when the passenger persisted in trying to convince her to accept the offer by saying they were going to a party, she agreed and got into the truck.

Once inside she was placed between the passenger and the driver, later identified as Ronald Richter. When the pickup stopped for a stop sign, the victim asked where the party was. The driver indicated, "Right back there." At this point the victim asked to be let out. The driver responded, "We are going to take you out and shoot you." With this the driver and the passenger commenced laughing. The victim's pleas to be let out were ignored, and she was driven several miles out of town. There the driver, with a gun in his hand, threatened to kill his victim unless she submitted to the two men's sexual desires. To this, the passenger once again laughed with delight. The victim then submitted to the sexual demands of the two men.

After a considerable period of time, the victim ended up sitting in the front of the pickup with the passenger while the driver, wrapped in a blanket, slept by the side of the road. A patrol car happened by. The officer inside pulled the car alongside and asked if everything was all right. The passenger indicated that everything was fine. However, as the patrol car started to back away behind the pickup, the victim yelled, "Don't go, he's got a gun." The police officer heard the passenger door of the

"(iii) The victim is physically helpless, and the actor knows or should reasonably know the victim is physically helpless and the victim has not consented; [or]

"(iv) The actor knows or should reasonably know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct."

2. The Fifth Amendment to the United States Constitution provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall he be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

3. Article 1, § 11, Wyoming Constitution provides:

"No person shall be compelled to testify against himself in any criminal case, nor shall any person be twice put in jeopardy for the same offense. If a jury disagree, or if the judgment be arrested after a verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy."

truck open and close. Then he saw the victim exiting through the door on the driver's side. He helped her into the patrol car and radioed for assistance.

Within two minutes other patrol cars began arriving on the scene. The police then began to search the area for the two men. An officer, while discussing what needed to be done with another officer, observed an individual, later identified as Ronald Richter—the driver—walking up towards the back of the pickup. He was carrying a blanket, and, as he was tossing it into the bed of the truck, the police officer, revolver in hand, told him to freeze, show his hands, and walk towards the officer. The individual was then forced to lay face down in front of a patrol car which was positioned behind the pickup. Handcuffs were placed on the individual and a pat-down search was conducted. A revolver was found in the blanket.

Appellant, Alvin Richter—the passenger—was apprehended later that morning. He was discovered walking near the intersection of Lampman Court and York Drive on the southern edge of Cheyenne.

Appellants were charged with first degree sexual assault. Their cases were consolidated for a trial which began November 24, 1980.

After the State's case both defendants moved for an acquittal. These motions were denied. During the defense's case, appellant Ronald Richter testified in his own behalf. His version of the night of July 19, 1980, was substantially different from the story related by the victim. He testified that he and his nephew, Alvin, had met the victim at the Mayflower Tavern. They had decided to leave and go to a party, but had failed to find it. Unsure of what to do next, he—Ronald—had driven the vehicle as directed by the victim to a location out in the country. Once there, Alvin and the victim began "making out." Ronald Richter further testified that he himself was unable, due to sexual inability, to take part in any sexual activity and that he fell asleep while lying on a blanket off to the side of the road. He stated that he had

made no threats to the victim nor had he heard Alvin make any.

On cross-examination, the prosecutor asked Ronald, "Did you volunteer this version to the deputies at that time when you walked behind the truck?" An immediate objection was made by defense counsel that the question amounted to improper comment upon appellant's right to remain silent. The defense counsel further moved for a mistrial contending that such is mandated in Wyoming by the case of *Clenin v. State*, Wyo., 573 P.2d 844 (1978). The trial judge agreed that the question was improper saying:

"THE COURT: That is completely improper, counsel, it does tend to violate the right he had at that time and place to remain silent. He doesn't have to give any statement or volunteer anything.

\* \* \* \* \* \*

"THE COURT: I will reserve ruling, [on the motion for a mistrial] but for now I will direct the jury to disregard the last question.

"(Proceedings at the bench concluded.)

"MR. FORWOOD: That's all I have, Your Honor.

"THE COURT: The jury will disregard the last question. I'm not sure there was any answer given to it, but disregard the last question, and if there was any answer disregard it also, and it will be stricken."

After taking time to assess the possible prejudice which may have occurred, the trial judge later denied the motion for a mistrial.

At the conclusion of the trial the jury returned verdicts of guilty. Accordingly, on March 10, 1981, a judgment and sentence was filed against each appellant. From those judgments these appeals were processed to this court.

I

The first issue we have to address is the one raised by Ronald Richter. We must consider whether the trial court erred when it failed to grant a mistrial after acknowl-

edging that the prosecutor's question on cross-examination infringed upon Ronald Richter's right to silence.

The Fifth Amendment to the United States Constitution guarantees all citizens of this country the right to remain silent in the face of criminal accusations. The United States Supreme Court has, in a series of recent cases, considered whether this right is violated when silence is used for impeachment. The first and most important case of this line was *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). There the Court stated:

> "We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment. *The State has not claimed that such use in the circumstances of this case might have been harmless error.* Accordingly, petitioners' convictions are reversed and their causes remanded to the state courts for further proceedings not inconsistent with this opinion." (Emphasis added and footnote omitted.) 426 U.S. at 619–620, 96 S.Ct. at 2245–2246.

The door of harmless error was left open.

In its most recent case on the subject, the high Court has further explained the *Doyle* holding. It drew a distinct line between pre- and post-arrest silence when it held:

> "Thus, impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial. We conclude that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility." *Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980).

The Wyoming Supreme Court has, on previous occasions, discussed the *Doyle* rule. In *Irvin v. State*, Wyo., 560 P.2d 372 (1977), this court reversed a criminal conviction where the prosecutor not only had been allowed to inquire as to why the defendant had not told the police his exculpatory story at the time of his arrest, but further had dwelt upon the point during his closing argument. The court there noted no difference between the right to silence granted by the Wyoming Constitution in Article 1, § 11 and the right guaranteed by the Fifth Amendment to the United States Constitution, and it ruled both had been violated.

The issue was again before this court in *Clenin v. State*, supra, 573 P.2d 844. There this court once again overturned a criminal conviction that had been obtained after the prosecution had conducted an extensive cross-examination of why the defendant had not told the police his exculpatory story after his arrest. In reaching that result, this court noted correctly that the question of whether *Miranda* warnings had been given was irrelevant since an individual's right to silence does not depend upon the individual's being advised that he has that right. As this court stated at that time:

> " * * * Advice as to that right by law enforcement officers or by the justice of the peace or by the judge of the district court is only for the purpose of expanding its protection by assuring that the accused person is aware of it." 573 P.2d at 846.

The court in *Clenin* was also called upon by the State to consider whether the error was harmless. As to that issue, the majority of this court deviated from the rule adopted by an overwhelming majority of courts in sister states and in the federal system and held that:

> " * * * any comment upon an accused's exercise of his right of silence, whether by interrogation of the accused himself, or by interrogation of others inherently is prejudicial, and will entitle an accused to reversal of his conviction. *Such a breach of the accused's constitutional protections is plain error and prejudicial per se.* While, in the light of the language of *Doyle v. Ohio*, supra, this may represent an extension of the rule of that case, it is our prerogative to so do in applying our state constitution. * * * " (Emphasis added.) 573 P.2d at 846.

As we shall explain later, we hold that this prejudicial per se rule was erroneously adopted.

This court has most recently considered the application of the *Doyle* rule in *Parkhurst v. State*, Wyo., 628 P.2d 1369 (1981), cert. denied —— U.S. ——, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981). However, there the court found that the police officer's testimony was not a comment upon the right of silence where it was merely an observation, volunteered by the witness, that the defendants did not say anything when they were detained but not arrested—a procedure permitted by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In the present case the facts show that the prosecutor asked the accused why he did not volunteer the story "to the deputies at that time when you walked behind the truck?" An immediate objection was made on the basis of *Doyle*; the district court ruled that the defense was right and that the question was improper.

The State has attempted to justify the failure to grant a mistrial by arguing that the district court's ruling the question improper was erroneous. On appeal considerable deference is accorded a trial court's findings of fact when they are made in connection with a decision on whether to suppress evidence. When no specific findings are made, this court upholds the general ruling of the trial court if it is supportable by any reasonable view of the evidence. *Neilson v. State*, Wyo., 599 P.2d 1326 (1979). Here the trial court ruled the evidence, which the prosecutor had sought admitted, to be inadmissible; however, the court did not explicitly state why it so ruled. In light of appellant's objection, which was specifically tied to *Doyle,* it would appear that the district court must have determined that the question referred to post-arrest silence.[4] Furthermore, the evidence is crystal clear that the appellant Ronald was placed under arrest as he "walked behind the truck."

The State has also attempted to argue that the prosecutor's question was directed towards statements that appellant made at the time of his arrest and not towards his silence. Though we acknowledge that it would have been proper to use such statements, there is no evidence in the record supporting the State's position on appeal. When the trial court ruled that the question was improper, the prosecutor did not make any offer of proof that some statement or other had occurred at the scene. In fact, the prosecutor said that the question "wasn't directed to an exculpating statement of total innocence."

So accepting the trial court's determination that the prosecutor's question was improper under *Doyle,* which was supported by the evidence, we must now consider whether the trial court erred when it refused to grant appellant a mistrial. Appellant points to the language found in *Clenin,* which we have quoted earlier, and argues that it requires us to reverse this case. However, we hold that to the extent that the opinion in *Clenin* requires a new trial every time there is *Doyle* error, the language is too broad.

The prejudicial-per-se approach should not be allowed to prohibit an affirmance of a criminal conviction in cases where the error was clearly harmless. Such a rule exacts too high of a toll on the legal system to be sustainable. This can be seen by surveying other jurisdictions and observing that an overwhelming majority have considered harmless error even though a *Doyle* violation was found. Our research discloses that, since the *Doyle* decision was handed down, twenty-six states besides Wyoming have found *Doyle* violations and have been called upon to overlook them because the error was harmless. Twenty-four of those states have entertained the harmless-error

---

4. Because the trial court ruled in the defendant's favor and sustained the objection, there was no reason for appellant to offer more proof that the question was addressed to post-arrest silence and not pre-arrest silence. To now say appellant failed to carry his burden of proof would amount to saying, because you won so easily, you really lost. Therefore, we will not examine whether appellant carried his burden as closely when he had already succeeded in convincing the trial court of the merit in his position. After the trial court's ruling, it was the State's burden to show that in fact the question was addressed to pre-arrest silence. We are unconvinced that the State carried this burden.

argument and not ruled it out of hand: *Wilkinson v. State*, Ala.Crim.App., 361 So.2d 400 (1978); *State v. Davis*, 119 Ariz. 529, 582 P.2d 175 (1978); *People v. Schindler*, 114 Cal.App.3d 178, 170 Cal.Rptr. 461 (1980); *People v. Ortega*, 40 Colo.App. 449, 580 P.2d 813 (1978); *State v. Zeko*, 177 Conn. 545, 418 A.2d 917 (1979); *Smith v. State*, 244 Ga. 814, 262 S.E.2d 116 (1979); *People v. Green*, 74 Ill.2d 444, 25 Ill.Dec. 1, 386 N.E.2d 272 (1979); *Jones v. State*, 265 Ind. 447, 355 N.E.2d 402 (1976); *State v. Satterfield*, 3 Kan.App.2d 212, 592 P.2d 135 (1979); *Darnell v. Commonwealth*, Ky., 558 S.W.2d 590 (1977); *Robeson v. State*, 285 Md. 498, 403 A.2d 1221 (1979); *Commonwealth v. Grieco*, 5 Mass.App. 350, 362 N.E.2d 1204 (1977); *People v. Sain*, 407 Mich. 412, 285 N.W.2d 772 (1979); *State v. Callahan*, Minn., 310 N.W.2d 550 (1981); *Cooley v. State*, Miss., 391 So.2d 614 (1980); *State v. Walker*, Mo.App., 617 S.W.2d 94 (1981); *State v. Callaway*, 92 N.M. 80, 582 P.2d 1293 (1978); *People v. Savage*, 67 A.D.2d 562, 415 N.Y.S.2d 845 (1979); *State v. Carmody*, N.D., 253 N.W.2d 415 (1977); *Maxville v. State*, Okl.Crim.App., 629 P.2d 1279 (1981); *Schrum v. Commonwealth*, 219 Va. 204, 246 S.E.2d 893 (1978); *State v. Evans*, 96 Wash.2d 1, 633 P.2d 83 (1981); *State v. Boyd*, W.Va.App., 233 S.E.2d 710 (1977); *Rudolph v. State*, 78 Wis.2d 435, 254 N.W.2d 471 (1977), cert. denied 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541. One state has at times considered harmless error and at times ruled it out. See *Commonwealth v. Easley*, 245 Pa.Super. 41, 369 A.2d 283 (1976), reversed in 483 Pa. 337, 396 A.2d 1198 (1979); *Commonwealth v. Flynn*, 248 Pa.Super. 62, 374 A.2d 1317 (1977). The United States Circuit Courts of Appeal that have considered Doyle have all considered harmless error and not ruled it to be unavailable. See, *Morgan v. Hall*, 569 F.2d 1161 (1st Cir. 1978), cert. denied 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1142; *United States v. Nunez-Rios*, 622 F.2d 1093 (2nd Cir. 1980); *Williams v. Zahradnick*, 632 F.2d 353 (4th Cir. 1980); *United States v. Ylda*, 643 F.2d 348 (5th Cir. 1981); *Weir v. Fletcher*, 658 F.2d 1126 (6th Cir. 1981) (U.S. appeal pending); *United States ex rel. Allen v. Franzen*, 659 F.2d 745 (7th Cir. 1981); *Quigg v. Crist*, 616 F.2d 1107 (9th Cir. 1980), cert. denied 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150; *United States v. Williams*, 556 F.2d 65 (D.C.Cir.1977), cert. denied 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070. The only jurisdiction which, besides Wyoming, has held the harmless-error approach as unavailable to Doyle violations is Florida. That line of precedent extends back to a time even before Doyle. See *Monroe v. State*, Fla.App., 396 So.2d 241 (1981).

In light of this overwhelming weight of authority, one must question this court's adherence to the rule that a violation of Doyle is always prejudicial per se. Where there was but one comment at trial to the fact of defendant's silence, even though the comment was ambiguous and the evidence of guilt was overwhelming, it makes no sense to reverse a conviction. The expense to the State is substantial, not only in monetary terms, but also in terms of the amount of confidence members of society possess in the system's ability to dole out justice and protect the law-abiding citizenry. The constitutional right to silence must and should be jealously guarded; but, it is self-defeating to refuse to recognize error as harmless when it is.

■ Here, the prosecutor asked Ronald Richter whether he volunteered his version of the events upon his arrest to the police. An objection was immediately made and sustained. The jury was not thereafter told whether he did or did not tell the police anything. Further, the jurors were instructed to disregard the question. No mention of the question was again made. The matter of silence was not exploited by the State. Since it was one isolated comment which was ambiguous, and since the evidence of appellant's guilt was overwhelming, we believe it is appropriate in this case to uphold the trial court's determination not to grant a mistrial. We firmly believe that there was no reasonable possibility that the error made any difference in the outcome of the trial. Accordingly we hold that the rule of harmless error is available and that in this case the error was

harmless beyond a reasonable doubt. *Campbell v. State*, Wyo., 589 P.2d 358 (1979). We set aside the holding of Clenin, supra, which decides that any comment on silence is inherently prejudicial and entitles an accused to reversal of his conviction.

## II

The second issue we must address is the one raised by Alvin Richter who challenges the sufficiency of the evidence against him. His argument is that the trial court erred in denying his motion for acquittal which was made at both the close of the State's case and after the defense rested. In particular, he contends that the evidence was insufficient to prove that he caused the submission of the victim by threat of death, serious bodily injury or extreme physical pain to be inflicted on anyone, a necessary element of the crime for which he was convicted.

The standards by which this court reviews the appropriateness of a denial of a motion for acquittal are well established. We are required to determine whether as a matter of law substantial evidence was presented which a reasonable jury may have found sufficient to convince it, beyond a reasonable doubt, of the appellant's guilt. *Russell v. State*, Wyo., 583 P.2d 690 (1978). In examining the evidence, we must accept the evidence of the prosecution as true, leaving out of consideration entirely the evidence of the appellant in conflict therewith, and give the prosecution every favorable inference which may reasonably and fairly be drawn from its evidence. *McCarty v. State*, Wyo., 616 P.2d 782 (1980). This court may only direct the entry of a judgment of acquittal when it may be said that:

> " * * * Viewing the evidence under the proper standard, * * * the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Further, if the evidence is such as to permit the jury to merely conjecture or speculate as to the defendant's guilt, the trial judge should not allow the case to go to the jury. * * * " *Chavez v. State*, Wyo., 601 P.2d 166, 170 (1979).

The State's theory of the case was that both Alvin and Ronald Richter were guilty of first degree sexual assault in violation of § 6–4–302(a)(ii), W.S.1977. The language in that subparagraph requires that the submission of the victim was gained by the actor through "threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably [believed] that the actor [had] the present ability to execute these threats." Further, the jury was instructed as to the requirements of this subparagraph and the necessity of finding all elements therein. Alvin Richter argues that there was insufficient evidence admitted to establish that he had personally caused the victim's submission through his own threats.

We must disagree with appellant's analysis of the evidence. The testimony of the victim did show that the verbal threats came chiefly through the mouth of Ronald Richter. However, it is also clear that (1) Alvin was carrying a knife which the victim was aware of; (2) Alvin laughed along with Ronald at the idea of killing the victim (this indicates that idea was not altogether abhorrent to Alvin); (3) Alvin laughed at the victim's pleas for release; and, (4) when, after the sexual contact was completed and the victim asked Alvin if they were going to kill her, he responded he did not know. Though this evidence does not demonstrate that Alvin threatened the victim in so many words, a "threat" can be expressed by acts or conduct. *State v. Bouldin*, 153 Mont. 276, 456 P.2d 830 (1969). Viewing the evidence as a whole, it is clear that Alvin's conduct was threatening within the meaning of the statute. There was sufficient evidence to allow a reasonable jury to conclude that appellant was guilty of first degree sexual assault in violation of § 6–4–302(a)(ii), supra. Accordingly, we also find no error in the trial court's refusal to grant appellant Alvin's motion for a judgment of acquittal.

Affirmed as to both appellants.

THOMAS, Justice, specially concurring.

I am in complete accord with all that is said in the majority opinion with respect to the affirmance of Alvin Richter's conviction. Other Wyoming cases support the conclusion that Alvin Richter is chargeable with those aspects of Ronald Richter's conduct that constitute the elements of the crime in this case. See *Coca v. State*, Wyo., 423 P.2d 382 (1967); *Lujan v. State*, Wyo., 423 P.2d 388 (1967); *Borrego v. State*, Wyo., 423 P.2d 393 (1967); *Espy v. State*, 54 Wyo. 291, 92 P.2d 549 (1939).

I agree that Ronald Richter's conviction should be affirmed. I would, however, do that on a different rationale than that espoused by the majority. In my opinion the majority of the court is far too anxious to adopt the rule of harmless error in this case. In the rush to satisfy that anxiety the majority assumes that error is present where none exists. In making that assumption the majority expands the rule of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 48 L.Ed.2d 91 (1976), as it was espoused by this court in *Clenin v. State*, Wyo., 573 P.2d 844 (1978), following *Irvin v. State*, Wyo., 560 P.2d 372 (1977). The rule of *Doyle v. Ohio*, supra, is a post-arrest rule. *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). The majority opinion extends that rule to a pre-arrest situation.

A careful reading of the testimony describing the circumstances of Ronald Richter's arrest discloses that several of the deputy sheriffs observed Richter in some way prior to his being placed under arrest. One of the deputies first heard something and then he heard a thump as Richter came out from around the back end of the pickup truck on the driver's side. He observed him walking from the rear of truck, along the side of it, at which time he was told to freeze and was taken into custody. The deputy who actually accomplished the arrest first observed Richter walking eastward from the field or the snow fence area toward the back of the pickup truck. About the time that he got to the bed of the pickup truck and put or threw the blanket into the bed, the arresting officer pulled

his revolver and told Richter to freeze and to let him see his hands. He did hear a loud clunk noise from the bed of the truck before he ordered him to show his hands. Richter did go to the rear of the pickup truck before he came around the truck toward the arresting deputy, who was stationed at the front of the driver's side. It follows that Richter did walk behind the pickup truck before he was arrested.

The question which is regarded as constituting the error reads as follows:

"Did you volunteer this version to the deputies at that time *when you walked behind the truck?*" (Emphasis added.)

The instant in time alluded to in that question was prior to Richter's arrest, which of course preceded any warning given him of his constitutional rights with respect to silence.

The majority opinion recognizes that in *Jenkins v. Anderson*, supra, the Supreme Court distinguished the situation in *Doyle v. Ohio*, supra, and held that there is no violation of the Fifth Amendment to the Constitution of the United States by the use of pre-arrest silence to impeach a criminal defendant's credibility. Under this decision it clearly follows that here there was no federal constitutional error.

I think it is important to consider everything that the record discloses with respect to this question. The record follows:

"Q. Did you volunteer this version to the deputies at that time when you walked behind the truck?

"MR. TRISTANI: Your Honor, I would like to approach the bench at this time.

"THE COURT: Sustained. Come forward.

"(The following proceedings had at the bench, outside the hearing of the jury.)

"MR. TRISTANI: Your Honor, at this time I would move for a mistrial on the grounds that the prosecution is interjecting the element of defendant's right to remain silent. It's a violation of the defendant's right to remain silent, as guaranteed by the Fifth Amendment through the Fourteenth Amendment of the U. S.

Constitution. It's a violation as set forth in the case law of *State vs. Danny Irvin*, and I believe also Clenin—Lou Mankus' case, Clenin, and *Doyle vs. Ohio*. He has a right to remain silent, and I think it is improper and prejudicial, and on those grounds I would move for a mistrial— even to ask the witness about his silence or any version or any kind.

"MR. FORWOOD: Your Honor, the question wasn't directed to an exculpating statement of total innocence, the question was directed to 'did you offer any version to the deputies at the scene.'

"THE COURT: That is completely improper, counsel, it does tend to violate the right he had at that time and place to remain silent. He doesn't have to give any statement or volunteer anything.

"I will ask you whether you want me to instruct the jury to disregard the question.

"MR. FORWOOD: I believe we have a 'no' answer.

"THE COURT: We don't have an answer.

"MR. FORWOOD: I thought I heard him answer.

"Can you check that, Mr. Reporter?

"MR. TRISTANI: Your Honor, my position is that when he asked the question— of course, whether or not he got a response, I think this is grounds for mistrial. Even asking that question is entirely improper, and I move for a mistrial as outlined.

"MR. FORWOOD: Your Honor, it's the state's position that while he made an exculpating statement at the scene, we are not going to compare versions on the stand. The question was to ask him if he offered any version, not directed as to why he did or didn't.

"THE COURT: It's improper, counsel. The question is improper in my view, and I have so indicated.

"I am simply going to direct the jury that that last question will be disregarded. There was, so far as the record, no answer. If there was, I will instruct them to disregard it.

"MR. TRISTANI: I will stand on my motion. There's no ruling; is that correct?

"THE COURT: I will reserve ruling, but for now I will direct the jury to disregard the last question.

"(Proceedings at the bench concluded.)

"MR. FORWOOD: That's all I have, Your Honor.

"THE COURT: The jury will disregard the last question. I'm not sure there was any answer given to it, but disregard the last question, and if there was any answer disregard it also, and it will be stricken."

Obviously counsel for the prosecution did not make an appropriate offer of proof or otherwise justify the question in an adequate way. Consequently the concern of the trial court in the heat of the trial is understandable. The district judge is not to be faulted for his ruling in the matter, but rather to be commended with respect to his recognition that no error had occurred. From the comments of the counsel for the prosecution, however, an inference is justifiable that he simply was attempting to lay foundation for establishing that Richter had given a different version at that time. Probably we never will know whether he did or did not.

In any event, I would hold, without equivocation, that what occurred in this instance was not an infringement upon Richter's exercise of his post-arrest right to remain silent. I would limit the rule of *Doyle v. Ohio*, *Clenin v. State*, and *Irvin v. State*, to situations involving post-arrest silence, and this case would not serve as a vehicle to espouse a rule of harmless error with respect to that fundamental constitutional right.

I recall that the court in *Clenin v. State*, supra, concluded that with respect to this problem it was best to develop a strict rule, the violation of which would result in a reversal. It was the thinking of the court at that time that this approach would be most likely to induce our prosecuting attorneys to avoid this kind of comment upon

silence, and would ultimately result in very few such errors being brought before us. In this regard I believe that the comments of Justice Lukowsky, in his dissent in *Darnell v. Commonwealth*, Ky., 558 S.W.2d 590 (1977), well may be prophetic. Noting that the Kentucky court had accepted impeachment of exculpatory stories of the defendants by comment upon their silence, and that the court had justified the ruling under the harmless-error rule enunciated in *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), Justice Lukowsky said that since the Kentucky court first did that it had seen a parade of cases in which this error had appeared. He said at 558 S.W.2d 596:

> " * * * Having seen the same error pass in review so many times, I am compelled to conclude that prosecutors are deliberately disregarding the teaching of 'Niemeyer' [*Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976)] in the hope of finding salvation in the harmless error doctrine. In other words, they are more interested in obtaining a conviction than in obtaining a conviction that will stick. "It may well be that we fathered this attitude when we failed to reverse 'Niemeyer.' We provided the tightrope of harmless error and perhaps that was enough to encourage zealots to walk it. * * *

> \*　　\*　　\*　　\*　　\*　　\*

> "It seems to me that to approach this problem on a case by case basis by hopefully precise but sometimes nebulous characterization of error as either harmless or prejudicial is but to encourage the commission of such error. * * *"

I am constrained to wonder if we are not launching ourselves upon the same troublesome path when we had attained a better route by our rule in *Clenin v. State*, supra. I am particularly troubled to observe this occur in a context in which the harmless-error rule of *Chapman v. State of California*, supra, which applies to federal constitutional error, is not correctly adopted by the majority. The rule of *Chapman v. State of California*, supra, is not an "overwhelming-

evidence" rule. The test from that case is adopted from *Fahy v. State of Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), and the test is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. Other courts have followed this test for discerning harmless error even though they have opted to pursue the harmless-error rule. *People v. Green*, 74 Ill.2d 444, 386 N.E.2d 272 (1979); *State v. Callaway*, 92 N.M. 80, 582 P.2d 1293 (1978); *State v. Carmody*, N.D., 253 N.W.2d 415 (1977); and *Rudolph v. State*, 78 Wis.2d 435, 254 N.W.2d 471 (1977), cert. denied 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

As I see it applied in this instance, I have another doubt as to the validity of the harmless-error approach. It seems to me that the standard is subjective in its entirety and, for example, overwhelming evidence turns out to be whatever three members of this court believe it to be in any given instance. Yet I recall the case of *Browder v. State*, Wyo., 639 P.2d 889 (1982), in which the case was described as a close case and the reason for the reversal was the potential of the improper argument to adjust the result in a close case. Browder was a sexual assault case, as is this case. In Browder the victim testified and there was corroboration in the form of fresh complaint. Other witnesses in Browder testified about the defendants boasting of their feat in accomplishing the rape. Concededly those witnesses were impeached. In this case the victim testified, and she did behave hysterically and make prompt complaint when a peace officer came upon the scene. Other aspects of her story were corroborated. In Browder both defendants took the stand and one admitted intercourse but claimed consent; the other denied intercourse. In this case one of the defendants testified that the other had consensual intercourse with the victim and the defendant who testified claimed that he had been offered oral sex by the victim but that he was unable to respond. I have struggled with discerning what objective factors made this case one in which the evidence was over-

whelming and yet made the Browder case a close case. I confess that I have been unable to identify the differentiating factors.

I do believe that having adopted harmless error this court, like the Kentucky court, will see the matter revisited in a significant number of instances. Ultimately a serious case will come before the court in which, for whatever reasons, a majority will conclude that the error was not harmless. Then, as in Browder, there will be a disappointed community who will find that if a strict rule had been in effect a lawful conviction would have been obtained, but that the encouragement of the court to prosecuting attorneys resulted in a conviction being obtained that could not stand.

I shall leave it to the reader to draw the conclusion as to whether in *State v. Boyd*, W.Va., 233 S.E.2d 710 (1977), the State of West Virginia really adopted a harmless-error rule as to a comment upon the silence of the defendant. The danger of relying upon conclusions reached by the respective courts of appeal in California readily can be discerned by comparing *People v. Schindler*, 114 Cal.App.3d 178, 170 Cal.Rptr. 461 (1980) with *People v. Redmond*, 111 Cal.App.3d 742, 169 Cal.Rptr. 253 (1980), vacated 29 Cal.3d 904, 176 Cal.Rptr. 780, 633 P.2d 976 (1981). My final caveat is that the reader should not assume that all of the cases cited in the majority opinion with respect to the harmless-error rule actually applied the harmless-error rule. In several of them the conviction was reversed upon a holding that the error was not harmless.

ROSE, Chief Justice, dissenting in *State v. Ronald Richter*, No. 5497, and concurring in *State v. Alvin Richter*, No. 5498.

Appellants Alvin and Ronald Richter were convicted of first-degree sexual assault in violation of § 6–4–302(a)(ii), W.S. 1977, stemming from an incident that occurred on July 19, 1980 and which is de-

scribed in detail in the majority opinion. In these appeals, Ronald and Alvin, each urge a single error for our consideration.

These issues are:

1. Did the prosecutor commit reversible error when questioning Ronald Richter by impermissibly commenting on his constitutional right to remain silent?

2. Did the trial court err in failing to grant Alvin Richter's motion for judgment of acquittal which is grounded in the charge that there was insufficient evidence upon which a jury could find that he was guilty beyond a reasonable doubt?

I would have reversed the conviction of Ronald Richter and remanded for a new trial and I will join in affirming the trial court's order of conviction of Alvin Richter.

## STATE v. RONALD RICHTER

### Case No. 5497

*Prosecutorial Comment on Ronald's Right to Remain Silent*

Appellant Ronald Richter urges that the prosecutor impermissibly commented upon his constitutional right to remain silent under the Fifth Amendment to the United States Constitution, made applicable to the states pursuant to the Fourteenth Amendment and Art. 1, § 11 of the Wyoming Constitution.[1]

During the trial, Ronald took the stand in his own defense and related his recollection of the events that occurred on July 18 and 19, 1980. He said that he and Alvin had met a girl named Jacque at the Mayflower Cafe in Cheyenne and that she had asked them for a ride to a party and her trailer. According to Ronald Richter, this was the reason the three individuals rode in the truck together. As they were driving south of town, the girl changed her mind about going to her house and directed Ronald to drive to the frontage road. He then testified that Alvin and Jacque took a blanket

---

1. The Fifth Amendment to the United States Constitution provides in pertinent part:

   "No person shall * * * be compelled in any criminal case to be a witness against himself, * * *."

Art. 1, § 11 of the Wyoming Constitution provides:

"No person shall be compelled to testify against himself in any criminal case, * * *."

and went behind a snowfence for the purpose of making love. He further related that Jacque asked him to join Alvin and her and, when he did, she attempted to perform an act of fellatio upon him. After this, he said that he fell asleep and when he awoke he was arrested.

Under the statute, consent is a defense to a charge of first-degree sexual assault. The first time consent had been injected into the evidence was through the testimony of Ronald Richter.

On cross-examination, the prosecutor inquired of Ronald about his version of what happened and the following dialogue ensued:

"Q. Do you remember any other articles of clothing back there?

"A. No, I don't.

"Q. The pants, you maybe did roll up in the blanket?

"A. Yes.

"Q. But you're not sure about anything else?

"A. No.

"Q. *Did you volunteer this version to the deputies at the time when you walked behind the truck?*" (Emphasis added.)

When this last question was asked, counsel for the defense objected on the grounds of impermissible comment on defendant's right to remain silent, and moved for a

mistrial. That motion was denied with the admonition that the jury was to disregard the question and the prosecutor was not to pursue further examination into the subject. By reason of this alleged invasion of his right to remain silent, appellant asks us to reverse his conviction and remand for a new trial.

The issue raised by Ronald Richter is not a new one. We have been here before. As the majority observe, both the United States Supreme Court and this court have dealt with similar questions on a number of occasions.

The principle of law upon which appellant relies is articulated in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In Doyle, the Court addressed the question of whether a prosecutor could, for the first time at trial, impeach a defendant's exculpatory story by cross-examining about his or her failing to relate the same story at the time of arrest[2] and after receiving *Miranda* warnings.[3] The Court answered the question in the negative. *Doyle*, supra, 426 U.S. at 619, 96 S.Ct. at 2245. The reason for this conclusion was set out as follows:

"Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See *United States v. Hale*, U.S., [422 U.S. 171] at 177, 45 L.Ed.2d 99, 95 S.Ct. 2133

**2.** In *Doyle*, supra, 426 U.S. at 613, 96 S.Ct. at 2242, the prosecutor questioned both codefendants in the following manner:

" 'Q. [By the prosecutor.] Mr. Beamer did arrive on the scene?

" 'A. [By Wood.] Yes, he did.

" 'Q. And I assume you told him all about what happened to you?

" 'A. No.' "

**3.** Whether *Miranda* warnings were or were not given, in the case at bar, is irrelevant because, as the majority note, we held in *Clenin v. State*, Wyo., 573 P.2d 844 (1978), that the defendant's right to silence does not depend upon his knowing he has that right. In *Clenin* we said:

"The record does not disclose whether Clenin was advised of his constitutional rights by a law enforcement officer. There are comments in *Doyle v. Ohio*, supra, and in some of the cases following it, which discuss the significance of that advice in relation to trial interrogation about the failure to furnish in-

formation to law enforcement officials. The right of an accused to remain silent, however, under Art. 1, § 11 of the Constitution of the State of Wyoming, which provides: 'No person shall be compelled to testify against himself in any criminal case, * * *,' does not depend upon his being advised of that right, but exists by virtue of the constitutional language. Advice as to that right by law enforcement officers or by the justice of the peace or by the judge of the district court is only for the purpose of expanding its protection by assuring that the accused person is aware of it." 573 P.2d at 846.

Therefore, any reference I make to *Miranda* warnings in connection with the right to remain silent, has to do with my need to relate the Doyle and other relevant case rules precisely—but—because of the *Clenin* rule—*Miranda* warnings are not a condition precedent to this defendant's reliance upon the right.

[2137]. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. at 617–618, 96 S.Ct. at 2244.

Since announcing its decision in *Doyle*, the Supreme Court has gone on to define the contours of the rule. In *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), it was held that it was not a violation of the defendant's right to remain silent when the prosecutor cross-examined the defendant concerning his failure to relate his self-defense story to the investigating officer *before being arrested* and apprised of his *Miranda* rights. The rule announced in Jenkins is not applicable to the case at bar since here the prosecutor's question was not directed at Ronald Richter's pre-arrest silence but rather at his post-arrest failure to relate to the arresting officers the story that the latter told in court.[4] In the same term, the Court held that the rule announced in Doyle did not apply to prosecutorial inquiry into prior inconsistent statements made by an accused after he had been given *Miranda* warnings. *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). The Court said:

> "Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." 447 U.S. at 408, 100 S.Ct. at 2182.

The distinction between Anderson and the case at bar is that after Anderson's arrest and after receiving *Miranda* warnings he chose to speak rather than remain silent. Thus, when he took the stand and related a different version than that which he told the police, it was held to be proper for the prosecutor to impeach the defendant with his prior story. In this case, the record does not reveal whether or not Ronald Richter made statements after he received his *Miranda* warnings. In the absence of such evidence, we must assume that no post-*Miranda* warning statements were made.[5]

For me, the facts of the present case fall squarely within the parameters of *Doyle v. Ohio*. The record shows that the prosecutor was undertaking to impeach Ronald Richter's story told for the first time at trial by cross-examining him about his failure to tell the same story at the time of arrest.

We described how we felt about prosecutors violating the defendant's right to remain silent when, in Justice Guthrie's concurring opinion in *Gabrielson v. State*, Wyo., 510 P.2d 534 (1973), we said:

> "Thus, we are confronted with a clear case wherein defendant's exercise of a constitutional right under the Fifth Amendment to the United States Constitution was utilized to penalize him. The chilling effect of such a procedure on the exercise of such a right needs no demonstration. A constitutional guaranty indeed becomes barren and valueless if by the assertion thereof it can be utilized to his detriment. The nature of this right and the demonstration of its importance and fundamental character is settled by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1624–1625 (particularly footnote 37), 16 L.Ed.2d 694, 10 A.L.R.3d 974. See also *Jones v. State*, Fla.App., 200 So.2d

---

4. When Ronald Richter first appeared from behind the truck he was ordered to freeze and to lie on the ground, at which point he was handcuffed and placed under arrest. I do not think the transcript can be read in any other way— the concurring opinion of Justice Thomas notwithstanding.

5. Although responding to defense counsel's objection to the question, the prosecutor alluded to exculpating statements made by the appellant at the scene; the nature of these alleged remarks is not apparent from the record, and thus we cannot assume that they were in fact made.

574, 576. A discussion involving this question appears in *State v. Ritson*, 210 Kan. 760, 504 P.2d 605, 611:

" 'There can be no doubt that the interjection of this evidence was error. Its sole purpose was to show that when defendant was confronted with evidence contradicting his alibi he had refused to talk and demanded counsel. It was clearly a use of defendant's invocation of his constitutional rights to silence and to counsel as substantive evidence of guilt— otherwise it had no probative value as rebuttal of defendant's story. Such a use is not permissible under *Miranda v. Arizona,* 384 U.S. 436, fn. 437, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974; and * * * [Citations].' " 510 P.2d at 539–540.

In *Jerskey v. State*, Wyo., 546 P.2d 173 (1976), we talked about a defendant's right to remain silent, at p. 175, when we said:

"The theory of the privilege against self-incrimination is a good, high-principled concept aimed at the preservation of the very most basic of the individual's rights in a democratic society and one which should be readily embraced by all of us. Why is it so difficult to accept and love? "In *Miranda*, referring to Escobedo, the United States Supreme Court said:

" ' . . . That case was but an explication of basic rights that are enshrined in our constitution—that "No person * * shall be compelled in any criminal case to be a witness against himself," and that "the accused shall * * * have the Assistance of Counsel"—rights which were put in jeopardy in that case through official overbearing. These precious rights were fixed in our Constitution only after centuries of persecution and struggle. And in the words of Chief Justice Marshall, they were secured "for ages to come, and * * * designed to approach immortality as nearly as human institutions can approach it," *Cohens v. Commonwealth of Virginia*, 19 U.S. 264, 6 Wheat. 264, 387, 5 L.Ed. 257 (1821).' (384 U.S. 443, 86 S.Ct. 1611)."

At pp. 176–178 we said:

"The right to refuse to testify against oneself, in a criminal proceeding, as this privilege is inscribed in our Federal Constitution, our State Constitution, and § 7–244, W.S.1957, 1975 Cum.Supp., is the personification of the remedy for an evil which had its beginnings in inquisitional behavior and did some of its dirtiest work in the ecclesiastical courts of early England. The protection was and still is imperative because it would appear that the inquisitions are not a thing of the past if the police manual directives for eliciting confessions, as reviewed in *Miranda*, are an accurate reflection of what has been going on.

"It is because of these ancient tendencies by which men in possession of the powers of government seek, with the weaponry of government, to impose their will upon those whom they govern (or 'serve') that the protections embodied in the Federal Fifth Amendment and the Wyoming Constitution, Article 1, Section 11, were needed.

"The evil is so often spawned in the name of the law and the pursuit of the public order as expressed by officials who are engaged in doing what is 'good,' 'right,' 'fair,' 'in the public interest,' or who are so often 'just doing their duty.' However, when public officials adopt their own ideas about morality as standards for adjudicating the righteousness of others—absent the guidelines furnished by the common and statutory law pool of experience contributed to by all civilized people—the 'good,' the 'right,' and the 'fair' become the expedient. The standard for the successful society is then judged according to the end result with precious little attention being paid to the manner by which it is achieved and to how many heads may have fallen into the basket in the process. Government becomes ultra powerful and the citizen is relegated to the least rather than the most important unit of the social order. The fragile cobwebs of human rights become misty visions which tend to blend with the ghosts of some public official's private opinion of what is 'good,' 'fair,' 'right,' and 'just' until they become im-

perceptible and—at last—are no rights at all.

"These are the forces with which the law is concerned when it contemplates the privilege against self-incrimination."

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966), Chief Justice Warren, writing for the Court and referring to the English trial which spawned our Fifth Amendment concept, said that these high principles

" * * * worked their way over to the Colonies and were implanted after great struggle into the Bill of Rights. Those who framed our Constitution and the Bill of Rights were ever aware of subtle encroachments on individual liberty. They knew that 'illegitimate and unconstitutional practices got their first footing . . . by silent approaches and slight deviations from legal modes of procedure.' *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 534, 29 L.Ed.2d 746, 752 (1886). The privilege was elevated to constitutional status and had always been 'as broad as the mischief against which it seeks to guard.' *Counselman v. Hitchcock*, 142 U.S. 547, 562, 12 S.Ct. 195, 197, 35 L.Ed. 1110, 1114 (1892). We cannot depart from this noble heritage." 384 U.S. at 459–460, 86 S.Ct. 1619–20.

In *Irvin v. State*, Wyo., 560 P.2d 372 (1977), we adopted the rule of *Doyle v. Ohio* when we held that the prosecutor in that case had violated defendant's constitutional right of silence by asking defendant why he failed to tell the police about his alibi defense. 560 P.2d at 373. Such questioning violates the rights enumerated in Art. 1, § 11 of the Wyoming Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, when, as in Irvin, the defendant has chosen to remain silent after he was arrested and given his *Miranda* warnings. 560 P.2d at 373.

In *Clenin v. State*, supra, we revisited the rule of *Irvin, Jerskey* and *Gabrielson*. In *Clenin*, the defendant was subjected to rather limited cross-examination concerning his failure to reveal an alibi defense before trial. In holding that such impeachment tactics violated Clenin's rights under Art. 1, § 11, Wyoming Constitution, we said:

"We hold that under this section of our state constitution *any comment upon an accused's exercise of his right of silence, whether by interrogation of the accused himself, or by interrogation of others inherently is prejudicial, and will entitle an accused to reversal of his conviction. Such a breach of the accused's constitutional protections is plain error and prejudicial per se.* While, in the light of the language of *Doyle v. Ohio*, supra, this may represent an extension of the rule of that case, it is our prerogative to so do in applying our state constitution." *Clenin v. State*, supra, 573 P.2d at 846. (Emphasis added.)

We also noted in *Clenin* that even though in *Irvin* the prosecutor, in his closing argument, dwelt at length upon the accused's failure to inform the police of his alibi defense and that the facts in Clenin did not show a similar effort to exploit Clenin's silence, *the mere fact of cross-examination, in and of itself,* invoked the rule of *Irvin v. State*, supra, and *Doyle v. Ohio*, supra. *Clenin v. State*, supra, 573 P.2d at 846. We cited extensive authority for this proposition in the Clenin opinion.[6]

Our most recent discussion of the *Irvin* and *Clenin* decisions appears in *Parkhurst v. State*, Wyo., 628 P.2d 1369 (1981). In discussing the *Irvin* and *Clenin* cases, we said:

"In neither *Irvin v. State*, supra, nor in *Clenin v. State*, supra, did this court prohibit all references to silence nor dictate unnecessary invocation of the stern rule of Clenin. Application of the rule must be made on a case-to-case basis. In Clenin it may appear without close examina-

---

**6.** See: *Warthen v. State*, Okl.Cr., 559 P.2d 483 (1977); *State v. Boyd*, W.Va., 233 S.E.2d 710 (1977); *State v. Scott*, 27 Ariz.App. 361, 555 P.2d 118 (1976); *State v. White*, 97 Idaho 708, 551 P.2d 1344 (1976), cert. den., 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976); *Jones v. State*, 265 Ind. 447, 355 N.E.2d 402 (1976); *State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976); *State v. Upton*, 16 Wash.App. 195, 556 P.2d 239 (1976).

tion that any statement having reference to silence of the defendant amounts to an absolute prohibition because he cannot be 'compelled in any criminal case to be a witness against himself' within the protection of the Fifth Amendment to the United States Constitution and 'compelled to testify against himself in any criminal case' within the language of § 11, Art. I of the Wyoming Constitution." 628 P.2d at 1381.

We then went on to further distinguish Parkhurst from Clenin and Irvin, when we said:

> "We must look at the two cases of Irvin and Clenin. *Both were squarely within Doyle because they were clear attempts to impeach the defendants because they had failed to tell law enforcement officers that they had alibis which at trial were for the first time raised as defenses. The use of defendant's silence in each case amounted to indirectly compelling him to testify.* Without so deciding, we can say that any defense raised by the defendant at trial for the first time without previous advice to the State would probably fall within the same category. Clenin and Irvin are, therefore, clearly distinguishable from the case before us." 628 P.2d at 1381. (Emphasis added.)

Therefore, we distinguished Irvin and Clenin from the facts of Parkhurst,[7] by observing that the Parkhurst reference did not result in compelling testimony, while, in the same breath, we continued to acknowledge the vitality of Clenin and Irvin. It still remains the rule in this state that when comment is made upon an accused's silence, and such comment results in compelling his testimony, then such reference becomes improper and is reversible error.

It is important to note that Parkhurst did nothing more than clarify Irvin and Clenin, and it restated the proposition that if a case arises wherein the facts are squarely within *Doyle v. Ohio,* supra, and *Irvin v. State,* supra, then the rules announced in those two cases control. *Parkhurst v. State,* supra, 628 P.2d at 1381. Once again, that rule states that a violation of Doyle and Irvin gives rise to per se prejudicial reversible error.

I would now turn to the relevant aspects of the case at bar in light of the above discussion. As mentioned previously, I am of the opinion that the facts of this case fall squarely within Doyle, Irvin and Clenin. The prosecutor's only reason for asking the question was to impeach Ronald Richter's story, which raised the consent issue for the first time in this case. Although the record reflects that this question was the only reference made in relation to Ronald's silence, (there was only a single reference to silence made in Clenin also) this makes no difference in view of our holding that the mere fact of cross-examination will, in and of itself, invoke the rule of Irvin and Doyle. *Clenin v. State,* 573 P.2d at 846. Thus, under Clenin, the comment violated Ronald's right to silence under Art. 1, § 11, Wyoming Constitution, and the Fifth Amendment to the United States Constitution, and was clear error and prejudicial per se.

I am aware that other states and several federal courts have applied the harmless-error rule to Doyle-type circumstances. See: *United States ex rel. Allen v. Rowe,* 591 F.2d 391 (7th Cir., 1979); *Chapman v. United States,* 547 F.2d 1240 (5th Cir., 1977), cert. den. 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977); *State v. Jordan,* 223 Kan. 197, 574 P.2d 194 (1977); *People v. Sheperd,* 37 Colo.App. 336, 551 P.2d 210 (1976). I acknowledge that they are free to do so in construing their own constitutions or in construing the Fifth Amendment to the United States Constitution since the Supreme Court left that question open in *Doyle v. Ohio,* supra, 426 U.S. at 620, 96 S.Ct. at 2245. This process of determining the effect of transgressions of the Doyle rule is exactly what we decided in Clenin when we announced the rule of "prejudicial

---

7. In Parkhurst, any comment to the silence of the defendants was elicited through the direct examination of the arresting officers. In an answer to the prosecutor's question concerning the initial stop of the defendants, the deputy recounted that neither defendant had responded to another deputy's statement to him concerning his request for consent to search the vehicle.

error per se." There we admitted our expansion of *Doyle v. Ohio*, while noting our right to make the error prejudicial "per se" when construing the Wyoming Constitution. Now, however, the majority violates Clenin by applying the harmless-error rule to a fact situation which clearly falls within the same factual structure as Doyle and Irvin. The majority's reason for rejecting the rule of Clenin is that it makes no sense to have a rule of reversible error per se when clearly the error was harmless. I suggest that this rationale flies directly in the face of the reasons for the rule of prejudice per se announced in Clenin, and also in the face of this court's long-standing tradition to jealously guard the right to silence guaranteed by Art. 1, § 11 of the Wyoming Constitution. *Clenin v. State*, supra; *Jerskey v. State*, supra; *Gabrielson v. State*, supra. Worse than that—it makes it impossible for lawyers to practice law under the case authority of a court which changes its precedential holdings whenever the mood strikes.

The reason for our rule of automatic reversal is deterrence, and if we are now going to decide every appeal according to whether or not there was prejudice in commenting upon an accused's silence, the prosecutor's continuing temptation to test us will be overwhelming.

Now we are back to a position which we rejected in Clenin as being unworkable and contrary to the protection afforded all individuals by Art. 1, § 11, Wyoming Constitution. I am sorry about that—we had a good rule in Clenin, but, with the majority opinion in this case, it is destroyed.

I would make this comment about Justice Thomas' concurring opinion. In accordance with my position relative to the need for the Clenin rule of "prejudice per se", I am in full accord with the portion of Justice Thomas' opinion discussing the injustice inherent in applying the harmless-error rule to these circumstances. However, my agreement is limited to that aspect of the concurring opinion because the factual picture upon which Justice Thomas relies is, in my judgment and in the judgment of those joining the majority opinion, totally unsupported by the record. All that the record

reflects is that the officers, at the scene, arrested Ronald Richter immediately after his presence was detected. All of the officers testified that the appellant was not observed until they were startled by the sound of a weapon hitting the bed of the pickup truck. At that point Richter was immediately ordered to freeze, and then placed in custody. Clearly, nothing in the record supports the assertion that the complained-of question referred to a pre-arrest situation. Therefore, any agreement I have with Justice Thomas arises from his discussion of the need for the Clenin rule, and I do not concur in his characterization of the question or the facts.

If I had written for the majority, I would have held that the prosecutor's attempt to impeach Ronald, by commenting upon his earlier silence, violated his constitutional right to silence and that such error was prejudicial per se, and I would, therefore, have reversed his conviction and remanded for a new trial.

### STATE v. ALVIN RICHTER

#### Case No. 5497

I join with the majority in affirming the trial judge's order upholding the conviction of Alvin Richter.

### ORDER DENYING REHEARING

The issue raised having been previously considered and upon careful consideration, it is

ORDERED that appellant's Petition for Rehearing be and is hereby denied.

ROSE, C. J., concurs and files statement.

THOMAS, J., dissents and files statement.

ROSE, Chief Justice.

I have reviewed the appellant's petition for rehearing and having found that it raises no new facts or propositions of law which were not originally considered by the court in the case on appeal, I must, for this reason alone, concur in the denial of the petition for rehearing. I rely solely upon the well-established rule that where the only reason advanced for rehearing is reargument of counsel's views formerly considered by this

court we will not grant a rehearing. *Hoskins v. State*, Wyo., 553 P.2d 1390 (1976); *Town of Glenrock v. Chicago & North Western Ry. Co.*, 73 Wyo. 385, 281 P.2d 455 (1955); *Mayor v. Board of Land Commissioners*, 64 Wyo. 430, 431, 195 P.2d 752 (1948); *Watts v. Lawrence*, 26 Wyo. 367, 185 P. 719 (1919), reh. den. 188 P. 34 (1920).

I must, however, reiterate my disagreement with the majority opinion in this case because of the death blow delivered to an accused's right to remain silent—a right which we have previously guarded jealously and without reservation. *Clenin v. State*, Wyo., 573 P.2d 844 (1978); *Irvin v. State*, Wyo., 560 P.2d 372 (1977); *Jerskey v. State*, Wyo., 546 P.2d 173 (1976); *Gabrielson v. State*, Wyo., 510 P.2d 534 (1973).

THOMAS, Justice.

I would grant the Petition for Rehearing in this instance because, for the reasons stated in my concurring opinion, "there is a reasonable probability that the court may have arrived at an erroneous conclusion or overlooked some important question or matter necessary to a correct decision." *Elmer v. State*, Wyo., 466 P.2d 375, 376 (1970).